# AHMAD KESHAVARZ
*Attorney at Law*

---

16 COURT ST., #2600
BROOKLYN, NY 11241

WWW.NEWYORKCONSUMERATTORNEY.COM
E-mail: ahmad@NewYorkConsumerAttorney.com

Telephone: (718) 522-7900
Fax: (877) 496-7809

May 26, 2022

**VIA ECF**
Hon. Rachel P. Kovner
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

>  **Re:  Plaintiff's opposition to Defendants ABC Process Serving Bureau, Inc. and Jay Brodsky's letter for pre-motion conference to file motion to dismiss (Dkt. No. 46)**
> *Texidor v. Tromberg, Morris & Poulin, PLLC, et al.,* No. 1:21-cv-04845-RPK-LB

Dear Judge Kovner:

The undersigned represents the Plaintiff Luz Texidor in this lawsuit against Defendants Tromberg, Morris & Poulin, PLLC f/k/a Stephen Einstein & Associates, P.C. and Stephen Einstein (collectively "Tromberg"), Collins Financial Services, Inc. ("CFS"), ABC Process Serving Bureau, Inc. d/b/a ABC Process Service ("ABC") and Jay Brodsky (collectively "ABC Defendants"), and Azzam Abderrahman for violations of the FDCPA and related state law claims.

Plaintiff filed her Complaint on August 27, 2022 and served all defendants. Dkt. No. 1. Defendants CFS, ABC and Abderrahman defaulted and certificates of default were entered against them. ABC filed an agreed application to vacate the default which was granted on consent. On March 10, 2022 ABC filed a letter for pre-motion conference to file a motion to dismiss. Dkt. No. 38. Plaintiff filed opposition to this letter on March 16, 2022 (Dkt. No. 39), and then filed her First Amended Complaint (Dkt. No. 43 "FAC") on April 22, 2022, adding Jay Brodsky as a Defendant. ABC Defendants filed another pre-motion letter requesting a conference for moving to dismiss the FAC, to which Plaintiff now files opposition.

## ADDITIONAL ALLEGATIONS IN FAC

While Plaintiff believes that she stated claims against Defendant ABC in her original complaint, as outlined in her opposition to ABC's first letter (Dkt. No. 39), certain allegations were added to the FAC to make ABC's liability unambiguous. *See generally* FAC ¶¶ 119-155.

### ABC's Request To File a Motion To Dismiss Is Futile

ABC Defendants' argument is essentially the same as it was in their March 10 Letter (Dkt. No. 38) – that they fall within the exemption of the definition of debt collector in the FDCPA of "any person *while* serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt." 15 U.S.C. § 1692a(6)(D) (emphasis added). However, in *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 423 (S.D.N.Y. 2010), the court held that Samserv could not invoke the exemption because the FDCPA claim was not premised on the service but the execution of and use of an affidavit *falsely* claiming service. "Because the FDCPA protects process servers only "while" they serve process, the

1

Samserv defendants' alleged failure to serve plaintiffs process and provision of perjured affidavits of service remove them from the exemption." *Id*.

ABC Defendants again contend *Sykes* held that Samserv was a debt collector "because" the other defendants regularly hired it to serve process, it was paid only for service attempts that were reported completed, and more than 90% of the persons who were sued defaulted because they were not actually served. Dkt. No. 46, p. 2. It is true (and unsurprising) that *Sykes* – a class action – made class allegations that supported a claim of class wide misconduct by, *inter alia*, the the execution and use of false affidavits of service. However, *Sykes* did not hold that "because" of the class allegations Samserv was not entitled to the debt collector exemption. Rather the opinion is clear that the exemption did not apply to the named plaintiffs because the exemption only applied "while" serving process and the defendants' "alleged failure *to serve plaintiffs* process and provision of perjured affidavits of service remove them from the exemption." *Sykes* at 423. (emphasis added).

Likewise, in the instant case, the FAC alleges facts supporting the allegation that the affidavit of service for Ms. Texidor was false: it alleges service at an address she never lived, and upon "Lauren," a putative family member who in fact does not exist. *See* FAC ¶¶ 45-55. And crucially, Plaintiff has now outlined in the additional allegations what a fraught history of contumacious deceptive process service ABC has. FAC ¶¶ 119-155.

ABC Defendants argue that the Court should distinguish this history from the history of a process serving company like Samserv in the *Sykes* case because damning testimony given by Defendant Jay Brodsky was in the context of "a public hearing for the New York City Department of Housing Preservation and Development ("HPD")…it has no relevance whatsoever to the service at issue." Dkt. No. 46, p. 2. This argument is unavailing for two reasons – first, Mr. Brodsky's testimony is just one example given by Plaintiff and the additional allegations alone would be sufficient to evince ABC Defendants' history of using deceptive process service, and second, Mr. Brodsky's testimony at the HPD hearing shows knowledge that his process servers were engaging in sewer service just a few months after the false affidavit of service in the collection lawsuit against Ms. Texidor.

ABC Defendants only address one piece of evidence given in the supplemental allegations about ABC Defendants in the FAC, the testimony by Jay Brodsky at the HPD hearing. FAC ¶¶ 125-137. Their Letter does not address:

1. The December 27, 2011 Consent Order with the DCA requiring, among other things, a monthly review of the completeness and accuracy of the records of its process servers (FAC ¶ 123 *citing* **Exhibit R** (ABC Consent Order));

2. The August 23, 2013 denial by the DCA of ABC's application for temporary authority to operate as a process serving agency until ABC agreed to pay a fine of $70,000 for violations including operating under its unlicensed trade name and using Defendant Azzam Abderrahman to serve process despite his failure to keep records properly (FAC ¶ 124 *citing* **Exhibit S** (ABC Investigation Letter));

3. The use of Schadrac Laguerre as a process server despite his history of process service misconduct, including signing false affidavits in the spring of 2008 (when Ms. Texidor was falsely alleged to have been served) (FAC ¶¶ 143-147 *citing* **Exhibits V, W,** and **X**);

2

4. The use of Ahmed Abderrahman as a process server despite his history of process service misconduct, including "pre-sign[ing] an Affidavit of Service prior to its written completion" (FAC ¶¶ 148-150 *citing* **Exhibit Y** and **Z**); and

5. The use of Bassem A. Elashrafi as a process server despite his history of process service misconduct, including lying under oath during a traverse hearing (FAC ¶¶ 151-152 *citing* **Exhibit AA** (Elashrafi License Denial).

Brodsky's and ABC's negligent selection, hiring, training, supervising, and use of Abderrahman to serve process on Ms. Texidor and others was not a one-off mistake – their entire practice of hiring and using of process servers is, at minimum, negligent for failing to investigate or outright ignoring the history of misconduct of the process servers.

Further, ABC Defendants misunderstand the utility of Mr. Brodsky's testimony at the HPD hearing. It is not offered to prove how much Defendant Mr. Abderrahman was or was not paid ("That ABC was paid only for service attempts that were reported completed, or $3.00 for completed service, concerned HPD matters") – it is meant to illustrate the extreme way that Mr. Brodsky conducts ABC's business that facilitates sewer service. *See* FAC ¶ 128 ("Even when service is successfully executed, Brodsky pays process servers **as little as** $3.00 for service" [emphasis added]). And unaddressed by ABC Defendants is how the testimony, while indeed concerning HPD matters, also addressed ABC Defendants' conduct more broadly. As the FAC outlines, Mr. Brodsky was asked "What do you do when you find out that there is a particular process server who has multiple traverse hearings or challenges to his or her services?" a question without any limitation to HPD matters, and he responded "…it doesn't necessarily mean anything in particular." FAC ¶ 131. Even if we were to reverse the Rule 12 standard, as ABC Defendants are implicitly asking for, and assume ABC Defendants' characterization of the testimony is true rather than Plaintiff's allegations, this testimony would still be an admission that in one realm of process service that ABC Defendants are not particularly concerned about when they find out about repeated claims of false affidavits of service against a particular process server they use. FAC ¶ 132.

ABC Defendants again argue that Plaintiff's GBL § 349 claim should be dismissed "for the same reasons" the FDCPA claim should be dismissed. This is a *non sequitur*. ABC Defendants argue the FDCPA should be dismissed because ABC falls under an exemption for the definition of a debt collector. There is no analogous requirement under GBL § 349. Instead, GBL § 349 governs "the conduct of *any* business, trade or commerce or in the furnishing of *any* service in this state..." GBL § 349(a) (emphasis added).

ABC Defendants cite to no authority for their argument that gross negligence cannot be found in "a highly regulated industry" where the tortfeasor "was licensed and in good standing." Dkt. No. 46, p. 3. Regardless, the argument is all the more odd in that Plaintiff cites to how Mr. Abderrahman lost his license on January 31, 2014 (FAC ¶ 54 *citing* **Exhibit F** (2014 Consent Order)). Misconduct that makes a highly regulated actor unfit to be licensed is no less misconduct because the regulatory enforcement took time to take effect. And just as Mr. Brodsky is directly and vicariously liable for the process server misconduct of ABC and Abderrahman under GBL § 349, he is also liable under New York City Administrative Code Section 20-409.2.

Respectfully,
/s/
Ahmad Keshavarz, Esc.

3