UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

LUZ TEXIDOR,

                                                      *Plaintiff*,

      -against-                                      21-cv-04845 (RPK)(LB)

TROMBERG, MORRIS, & POULIN, PLLC f/k/a
STEPHEN EINSTEIN & ASSOCIATES, P.C.,
STEPHEN EINSTEIN, COLLINS FINANCIAL
SERVICES, INC., ABC PROCESS SERVING BUREAU,
INC., d/b/a ABC PROCESS SERVICE, AZZAM
ABDERRAHMAN, and JAY BRODSKY,

                                                      *Defendants*.

----------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## ABC AND BRODSKY'S MOTION TO DISMISS

**Corey Stark**
**On the Brief**

**COREY STARK PLLC**
110 EAST 59TH STREET, 22ND FLOOR
NEW YORK, NEW YORK 10022

# TABLE OF CONTENTS

**Page**

Authorities Cited ......................................................................................................................... ii

Preliminary Statement ...................................................................................................................1

Facts ...............................................................................................................................................3

Argument .......................................................................................................................................5

    I.    Standard of Review ................................................................................................5

    II.    The FDCPA Claims Against Defendant ABC Should Be Dismissed Because ABC Is Not a "Debt Collector" ........................................................................6

    III.    The New York General Business Law Claim Should Be Dismissed as Well ......9

    IV.    Plaintiff's Gross Negligence and Negligence Claims Also Fail ...........................9

    V.    Neither ABC Nor Mr. Brodsky Is Liable Under the New York City Administrative Code ............................................................................................10

    VI.    The Court Should Decline to Exercise Supplemental Jurisdiction ....................11

Conclusion ...................................................................................................................................11

# AUTHORITIES CITED

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................... 5, 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................. 5

*Broder v. Cablevision Systems Corp.*, 418 F.3d 187 (2d Cir. 2005) ............................................. 8

*Kessenich v. Raynor*, 120 F. Supp. 2d 242 (E.D.N.Y. 2000) ......................................................... 5

*Matter of Morris v. New York State Dept. of Taxation & Finance*, 82 N.Y.2d 135, 603 N.Y.S.2d 807 (1993) ................................................................................................................ 10

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20, 623 N.Y.S.2d 529 (1995) .................................................................................................................. 9

*Romea v. Heiberger & Assocs.,* 163 F.3d 111 (2d Cir. 1998) ....................................................... 6

*Sykes v. Mel Harris & Assocs. LLC*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010) ...................... 5, 6, 7, 8

*Travelers Indemnity Company of Connecticut v. Losco Group, Inc.*, 204 F. Supp. 2d 639 (S.D.N.Y. 2002) ....................................................................................................................... 10

*Wilson v. Northwestern Mutual Insurance,* 625 F.3d 54 (2d Cir. 2010 .......................................... 9

**Other Authority**

Fair Debt Collection Practices Act, 15 U.S.C § 1692 ..................................................................... 6

New York Administrative Code § 20-409.2 ................................................................................. 10

New York General Business Law § 349 ........................................................................................ 9

**Preliminary Statement**

This memorandum of law is submitted on behalf of defendants ABC Process Serving Bureau, Inc. ("ABC"), and Jay Brodsky in support of their motion to dismiss the claims against them in Plaintiff's Third Amended Complaint (the "Complaint").

Plaintiff has advanced causes of action against ABC for allegedly violating the Fair Debt Collection Practices Act, 15 U.S.C. Section 1692, *et seq*. ("FDCPA"), against ABC and Mr. Brodsky for allegedly violating The New York General Business Law Section 349 and the New York City Administrative Code Section 20-409.2 ("Section 20-409.2"), and for negligence and gross negligence. As explained in detail below, each of Plaintiff's claims is patently deficient and fails to state a claim as a matter of law. Accordingly, the Court should grant the instant motion in its entirety and dismiss with prejudice the Complaint as against ABC and Mr. Brodsky.

Plaintiff's FDCPA claim fails because ABC is not a "debt collector" under any interpretation of the law. The definition of debt collector excludes any person serving or attempting to serve legal process. FDCPA § 1692a(6)(D). It is settled that a process server whose involvement is limited to "serving the [debt collection] communication on the consumer" – *i.e.,* who acts solely as a messenger -- is exempt from the FDCPA. ABC's business practice falls within this process-server exemption. Plaintiff wishes the Court to invoke a recognized exception to the process-server exemption (the *Sykes* exception; see below). Yet nothing suggests that ABC went beyond the role of messenger – such as, for example, engaging in abusive or harassing activities to force Plaintiff to repay the alleged debt – in a manner that would cause the *Sykes* exception to apply. Plaintiff's attempt to shoehorn the facts into an inapposite exception therefore fails. ABC is not a debt collector, the FDCPA process-server exemption applies, no *Sykes* exception applies to the process-server exemption, and the first count should therefore be dismissed against ABC.

Plaintiff's General Business Law Section 349 claims fail as well, because the Complaint does not allege that ABC or Mr. Brodsky engaged in any deceptive act or practice or that any part of its business practices has a broader impact on customers at large.  The allegations in the Complaint that ABC and Mr. Brodsky knew, or should have known, of the falseness of the affidavit of one of its process servers, as well as the claims that ABC and Mr. Brodsky "encouraged" and "almost guaranteed" a practice known as "sewer service," are belied by the exhibits to the Complaint, which are incorporated by reference.  Moreover, there is no indicia of collusion here.  Accordingly, as the Complaint does not allege a cause of action under the General Business Law, the second count should be dismissed against ABC and Mr. Brodsky as well.

As for his gross negligence and negligence claims, Plaintiff alleges that ABC and Mr. Brodsky acted with gross negligence by hiring, training, and supervising Azzam Abderrahman, and by selecting him for the assignment to serve Plaintiff.  Mr. Abderrahman was not an employee, but an independent contractor.  He was licensed and in good standing by the New York City Department of Consumer Affairs, and he was acting in a highly regulated industry.  The complaints made against Mr. Abderrahman to which Plaintiff refers, and upon which Plaintiff bases his contention that ABC and Mr. Brodsky had knowledge about Mr. Abderrahman or his reputation and must therefore answer for his false affidavit, occurred *after* the service of process at issue herein and could not possibly have informed the defendants' actions.  These facts alone demonstrate that the high standard required to establish gross negligence has not been met.  Nor can the lesser negligence standard.  Accordingly, both the gross negligence and negligence claims (counts four and five) should also be dismissed.

Finally, as for Plaintiff's Section 20-409.2 claims, the Complaint does not provide any factual allegations that ABC or Mr. Brodsky failed to act in accordance with the laws and rules

2

governing service of process in the state of New York. Section 20-409.2 confers no right to pierce the corporate veil, and no allegations sufficient to pierce the corporate veil are contained within the Complaint. Accordingly, Plaintiff's Section 20-409.2 claim should be dismissed as to ABC and Mr. Brodsky.

## Facts

The following are the facts relevant to this motion to dismiss. They consist of allegations from the Complaint, information from the exhibits attached to the Complaint, and omissions from the Complaint.

ABC is a process serving agency organized under the laws of the State of New York (Complaint ¶ 10).[1]

Azzam Abderrahman was a process server for ABC Process (Complaint ¶ 11).

In 2008 Mr. Abderrahman was an independent contractor, not an employee of ABC, in a highly regulated industry, and Mr. Abderrahman was licensed and in good standing by the New York City Department of Consumer Affairs (Complaint Exhibits D and T p. 133).

Mr. Abderrahman prepared an affidavit of service indicating that he had served Plaintiff on February 29, 2008 (Complaint ¶ 44 and Exhibit C).

It is alleged by Plaintiff that from May 3, 1994, to January 31, 2014, Mr. Abderrahman "engaged in repeated and widespread acts of process service misconduct, as catalogued in the New York City Department of Consumer Affairs Second Amended Notice of Hearing against him (Complaint ¶ 49). The problem is that the exhibit Plaintiff attaches to the Complaint, Exhibit D,

---

[1] Plaintiff's Third Amended Complaint, which has Exhibits A through EE attached, is document number 63 on the electronic court filing system.

3

fails temporally to support this allegation. The earliest incident of alleged misconduct on the part of Mr. Abderrahman did not occur until October 16, 2009. This was more than a year after the service of process which is at issue in this action (Complaint Exhibit C). Indeed, the vast majority of the instances of misconduct reported in this document occurred even later, in 2012 and 2013 (Complaint Exhibit D). How then were ABC or Mr. Brodsky to have known about actions of Mr. Abderrahman that had not yet occurred? Nor has Plaintiff presented any other evidence supporting its claim that ABC or Mr. Brodsky should have known that Mr. Abderrahman was a risk for making a false affidavit.

Similarly, Plaintiff's proferred evidence fails to support the allegation that Mr. Brodsky's company hires exclusively, or almost exclusively, process servers who have repeatedly been disciplined or have had their licenses revoked (Complaint ¶ 136). The exhibits to the Complaint to support this allegation bely such a claim instead. They show that the independent contractors identified by Plaintiff were disciplined well after the 2008 service at issue (Complaint Exhibits V, W, X, Y, Z, and AA). Again, there is no evidence that ABC or Mr. Brodsky somehow sought or attempted to set up a company with process servers who had disciplinary issues, or that they knew or should have known that any of these persons were at risk for swearing out false affidavits.

Finally, it is alleged that Mr. Brodsky "set up a payment structure that encourages and almost guarantees sewer service by not paying process servers in consumer credit cases unless they provide an affidavit of service that shows successful service, and pay his process servers as little as three dollars per service" (Complaint ¶¶ 136, 141, 142, and 143). Once again, the exhibit Plaintiff attached to the Complaint to support the allegation belies it instead. The paying of process servers only if they obtained successful service was not a practice that applied to all collections cases, and nothing suggests that this condition applied to the service of process at issue

4

here (Exhibit T pp. 137 - 138).  As to the $3.00 per service payment referred to by Plaintiff, this arrangement applied to housing cases only (Exhibit T p. 134).  Since this is not a housing case, the reference to the testimony set forth in the Complaint is totally inapposite and misleading.

The Complaint does not allege that the other defendants regularly hired ABC to serve process, or that a large percentage of the persons who were sued defaulted because they were not actually served.[2]

## Argument

### I.     Standard of Review

To survive a Rule 12(b)(6) motion, a complaint must contain all factual allegations, either direct or inferential, with respect to "all the material elements necessary to sustain a recovery under some viable legal theory."  *Kessenich v. Raynor*, 120 F. Supp. 2d 242, 255 (E.D.N.Y. 2000).  In determining whether a complaint states a plausible claim for relief, a court must accept all well-pleaded factual allegations as true, but it need not accept those allegations that are merely "bare assertions," "legal conclusions," or "formulaic recitation[s] of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009).  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  Instead, the complaint must contain factual allegations that "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Here, ABC and Mr. Brodsky are entitled to judgment on the pleadings, because the legal theories espoused in the Complaint are defective as a matter of law.

---

[2] This is a fatal omission.  In *Sykes v. Mel Harris and Associates*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010), the court determined that the process server was a "debt collector" because the other defendants regularly hired it to serve process, it was paid only for service attempts that were reported as completed, and more than ninety percent of those who were sued ended up defaulting because they were not actually served.  *Id.* at 419.

## II. The FDCPA Claims Against Defendant ABC Should Be Dismissed Because ABC Is Not a "Debt Collector"

ABC is a not debt collector under the FDCPA. The FDCPA specifically defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts." FDCPA § 1692a(6). This definition specifically excludes "any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt." FDCA § 1692a(6)(D). It is settled that a process server whose involvement is limited to "serving the [debt collection] communication on the consumer – *i.e.,* a messenger -- is exempt from the FDCPA. *Romea v. Heiberger & Assocs.,* 163 F.3d 111, 117 (2d Cir. 1998) (*quoting* S. Rep. No. 95–382, at 3–4 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 1695, 1697–98).

The process-server exemption is only lost if the process server acts outside his duties as a messenger. *See Sykes v. Mel Harris & Assocs. LLC*, 757 F. Supp.2d 413, 423 (S.D.N.Y. 2010) ("a process server who goes beyond being merely a messenger . . . and engages in prohibited abusive or harassing activities to force an individual to repay a debt cannot claim the exemption's protections") (citations and internal quotation marks omitted). Plaintiff goes to great lengths to plead a *Sykes* exception, but nowhere to be found in his pleadings are any factual allegations indicating that ABC and Mr. Brodsky were involved, in any way, in the business of attempting to force her to repay a debt.

The allegations Plaintiff makes in a desperate attempt to manufacture a *Sykes* exception are inapposite and fall woefully short of what is needed to save his case. In *Sykes* the court determined that the process server company was a "debt collector" because the other defendants regularly hired it to serve process, it was paid only for service attempts that were reported completed, and more than ninety percent of the persons who were sued defaulted because they were not actually

6

served. *Id.* at 419. The *Sykes* defendants knew that their affidavits of service were highly likely to be false and that they had engaged in prohibited abusive or harassing activities in an effort to force the plaintiffs to repay the debts. *Id.* at 423. No such facts are present here.

An analysis of the allegations here supports that ABC was not a debt collector, and therefore dismissal of the claims against it are appropriate. This is true for three primary reasons. First, the allegations upon which Plaintiff relies post-date the service of process at issue here. Plaintiff's principal argument is that ABC, through Mr. Brodsky, knew or should have known that the service upon Plaintiff was supported by a false affidavit because Mr. Abderahman, the process servicer, was "notorious for executing false affidavits of service, so much so that he was repeatedly sanctioned and ultimately had his license revoked for systematically executing false affidavits" (Complaint p. 2, third paragraph under the heading Summary of Claims). The service of process at issue occurred on February 29, 2008. But Mr. Abderahman was not suspended by the New York City Department of Consumer Affairs until 2014, the Department's notice of a hearing is dated December 23, 2013, and the alleged misconduct referred to in the notice all occurred well after February 29, 2008 -- by more than a year (Exhibit D). It is simply impossible that events occurring after the date of service Plaintiff is complaining about could have put ABC on notice thereof. The same is true for the other process servers associated with ABC, whom Plaintiff alleges had a history of "sewer service." The allegations concerning those persons also post-date the February 2008 service on Plaintiff (Exhibit V, W, X, Y, Z, and AA).

Second, many of allegations that concern ABC are nothing more than labels and conclusions without any basis in fact. Plaintiff alleges that ABC and Mr. Brodsky "encouraged" and "almost guaranteed sewer service" because their process servers received as little as $3.00 per service and were not paid at all unless they made service successfully (Complaint ¶ 136). To

7

support these contentions, in his First Amended Complaint Plaintiff specifically refers, ironically, to testimony Mr. Brodsky himself gave in a public hearing for the New York City Department of Housing Preservation and Development.  Making use of that testimony to plead a *Sykes* exception is creative, but what Mr. Brodsky said has nothing to do with the service of process herein.[3]  Mr. Brodsky's testimony makes clear that the $3.00 per service payment was for housing cases only (Exhibit T p. 134).  But this is not a housing case, so the reference to the testimony is totally inapposite and misleading.  Mr. Brodsky's testimony also made clear that ABC was paid only for service attempts that were reported completed when the particular customer insisted upon that condition (Exhibit T pp. 137 – 138).  The testimony made clear that the payment condition did not apply in all collections cases, and nothing suggests that the condition applied here.  *Id*.  Since Plaintiff's conclusions are incorrect and misleading and do not support the allegation that ABC set up a structure to encourage sewer service, Plaintiff's attempt to manufacture a *Sykes* exception fails.

   Third, unlike *Sykes*, there is no indicia of collusion here.  In *Sykes,* other defendants regularly hired the same process server, the process server was paid only for service attempts that were reported completed, and more than ninety percent of those who were sued ended up defaulting because they were not actually served.  *Sykes* at 419.  As described above, there is no evidence here that any agreement existed that the process server would only be paid if service were made.  Moreover, and most significantly, the Complaint does not allege that the other defendants regularly hired ABC to serve process, or that a large percentage of the persons who were sued defaulted because they were not actually served.  These omissions alone constitute a tacit

---

[3] Since the testimony is attached as an exhibit to the complaint, the Court may consider the content of the testimony. *Broder v. Cablevision Systems Corp.*, 418 F.3d 187, 197 (2d Cir. 2005).

admission that there was no collusion between ABC and any other defendant. Nor is there evidence here of any other type of abusive or harassing activities designed to force Plaintiff to repay a debt. Accordingly, the process-server exemption applies, and a dismissal should be granted.

### III. The New York General Business Law Claim Should Be Dismissed as Well

Under General Business Law Section 349, a plaintiff must show that: (1) the defendant's conduct is "consumer-oriented"; (2) the defendant is engaged in a "deceptive act or practice"; (3) the plaintiff was injured by this practice; and (4) "the acts or practices have a broader impact on consumers at large." *Wilson v. Northwestern Mutual Insurance,* 625 F.3d 54, 64 (2d Cir. 2010) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20, 24–27, 623 N.Y.S.2d 529 (1995).

The Complaint does not allege that ABC or Mr. Brodsky engaged in any deceptive act or practice, or that any practice of theirs has a broader impact on customers at large. As described above, both conclusory allegations, that process servers were paid only $3.00 per service, which applied to some housing cases only, or that they would be paid only if service were made, are false, inapposite, and misleading. Moreover, unlike in *Sykes*, no collusion has been shown here, or even alleged. Plaintiff has not pleaded any deceptive act or practice, or that any such practices have a broader impact on consumers at large. Accordingly, the General Business Law claims should be dismissed as well.

### IV. Plaintiff's Gross Negligence and Negligence Claims Also Fail

Under New York law "gross negligence is defined as conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing. To constitute gross

9

negligence, the act or omission must be of an aggravated character, as distinguished from the failure to exercise ordinary care." *Travelers Indemnity Company of Connecticut v. Losco Group, Inc.*, 204 F. Supp. 2d 639, 644 (S.D.N.Y. 2002) (internal quotation marks and citations omitted). Plaintiff claims that ABC and Mr. Brodsky somehow acted with gross negligence by hiring, training, and supervising Azzam Abderrahman, and by selecting him for the assignment to serve Plaintiff (Complaint ¶ 121). Again, as set forth above, Mr. Abderrahman was an independent contractor, not an employee, he was licensed by the New York City Department of Consumer Affairs and was in good standing, and none of the complaints later made against him had been made. The high standard required for gross negligent cannot be met with these facts, and the lesser negligence standard cannot be satisfied either. Moreover, no facts were alleged which are sufficient to pierce the corporate veil and make Mr. Brodsky personally liable for any alleged negligence.[4]

### V. Neither ABC Nor Mr. Brodsky Is Liable Under the New York City Administrative Code

By its terms the New York City Administrative Code Section 20-409.2 provides an injured party with a cause of action against a process server and process serving agency. It provides as follows:

> Any person injured by the failure of a process server to act in accordance with the laws and rules governing service of process in New York state, including this subchapter and regulations promulgated thereunder, shall have a cause of action against such process server and process serving agency, which distributed or assigned process for service, in any court of competent jurisdiction …

---

[4] A party seeking to pierce the corporate veil must establish that "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury." *Matter of Morris v. New York State Dept. of Taxation & Finance*, 82 N.Y.2d 135, 603 N.Y.S.2d 807 (1993).

10

The Complaint does not provide any factual allegations indicating that either ABC or Mr. Brodsky took any affirmative action, or made any representation, that was deceptive or misleading in any way, nor can he point to any indicia of collusion through a coordinated scheme or that ABC or Mr. Brodsky failed to act in accordance with the laws and rules governing service of process in New York state. This cause of action consists of nothing more than "labels and conclusions" and a "formulaic recitation of the elements of the cause of a cause of action," which cannot survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009).

Section 20-409.2 confers no right to pierce the corporate veil, and no allegations sufficient to pierce the corporate veil are contained within the Complaint. Accordingly, the Section 20-409.2 claim should be dismissed as to ABC and Mr. Brodsky.

## VI. The Court Should Decline to Exercise Supplemental Jurisdiction

The Court should decline to exercise supplemental jurisdiction under 28 U.S.C. Section 1367 with respect to Plaintiff's claim brought under the New York General Business Law, New York City Administrative Code, gross negligence, and negligence. Where the federal claims are dismissed before trial, the state claims should be dismissed as well.

## Conclusion

In conclusion, the motion to dismiss the claims against ABC and Mr. Brodsky should be granted in its entirety.

Dated: New York, New York
April 21, 2023

                                         COREY STARK PLLC

                                         /s/_____
                                        By: Corey Stark (CS-3897)
                                        *Attorneys for Defendants* ABC Process
                                        Serving Bureau, Inc. and Jay Brodsky
                                        110 East 59th Street, 22nd Floor
                                        New York, New York  10022
                                        (212) 324-3705