UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LUZ TEXIDOR,

                Plaintiff,                         **REPORT AND RECOMMENDATION**
                                                                        21 CV 4845 (RPK)(LB)

   -against-

TROMBERG, MORRIS, & POULIN, PLLC f/k/a
STEPHEN EINSTEIN & ASSOCIATES, P.C.,
STEPHEN EINSTEIN, COLLINS ASSET
GROUP, LLC, ABC PROCESS SERVING
BUREAU, INC. d/b/a ABC PROCESS SERVICE,
AZZAM ABDERRAHMAN, and JAY BRODSKY,

                Defendants.
------------------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

        Plaintiff brings this unfair debt collection case against Defendants Tromberg, Morris, & Poulin, PLLC f/k/a Stephen Einstein & Associates, P.C. ("Tromberg"), Stephen Einstein, Collins Asset Group, LLC ("CAG"), ABC Process Serving Bureau, Inc. d/b/a ABC Process Service ("ABC Process"), Jay Brodsky, and Azzam Abderrahman. Plaintiff's third amended complaint brings, *inter alia*, claims against ABC Process under the Fair Debt Collection Practices Act, 15 U.S.C. Section 1692, *et seq.* ("FDCPA"), and against ABC Process and Brodsky for violating New York General Business Law ("NYGBL") § 349 *et seq.*, New York City Administrative Code ("N.Y.C. Admin. Code") § 20-409.2, and for negligence and gross negligence. ABC Process and Brodsky (the "ABC defendants") now move to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). The Honorable Rachel P. Kovner referred the motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that the ABC defendants' motion to dismiss the third amended complaint should be denied.

# BACKGROUND[1]

I. State Court Debt Collection Proceedings

In February 2008, Collin Financial Services, Inc. ("CFS")[2] commenced an action against plaintiff in the Civil Court of the City of New York, Kings County to collect a debt arising from the sale of a Dell computer. Third Am. Compl. ("TAC") ¶ 20 [ECF No. 63]; State Court Compl., Ex. B [ECF No. 63-2]. In the underlying state court action's verified complaint, CFS alleged that plaintiff had entered into a credit agreement with CFS's predecessor in interest, American Investment Bank, N.A. ("AIB"), and that pursuant to that agreement, plaintiff owed $2,539.03 with interest as of January 2003, plus costs and disbursements. State Court Compl., Ex. B; TAC ¶ 21. AIB sold the debt to CFS sometime between January 2003 and February 2008. TAC ¶ 15. CFS then retained defendant Tromberg, a debt collection law firm known at that time as "Stephen Einstein & Associates, P.C.," to represent it in the underlying state court action. Id. ¶¶ 4–6, 20.

Tromberg engaged defendant ABC Process to serve the state court summons and complaint on plaintiff. Id. ¶¶ 10–12, 44. ABC Process assigned one of its process servers, defendant Azzam Abderrahman, to serve plaintiff. Id. ¶¶ 11–12, 48. On February 29, 2008, Abderrahman executed an affidavit of service stating that Abderrahman had served plaintiff by leaving a copy of the summons and complaint with "Lauren, Relative," at plaintiff's "last known residence" at 483 Lincoln Ave, Apt 3F, Brooklyn, NY 11208 ("483 Lincoln"), and that a copy of the summons and complaint was mailed to plaintiff at the same address. Id. ¶¶ 44–45; Aff. of Service, Ex. C [ECF No. 63-3]. The affidavit is notarized by defendant Jay Brodsky. Aff. of Service, Ex. C. Plaintiff alleges that she has never resided at 483 Lincoln and does not have a relative named Lauren or a

---

[1] The following background is drawn from the third amended complaint and attached exhibits. All well-pleaded allegations are considered true for the purposes of this motion.
[2] Plaintiff named Collins Financial Services, Inc. ("CFS") as a defendant in the original complaint. The TAC removes CFS and adds CAG as a defendant in this matter.

relative who matches the description provided in the affidavit. TAC ¶¶ 46–47. Plaintiff also alleges that on the purported date of service, she was in the custody of the New York City Department of Corrections and Community Supervision ("DOCCS"), and that the DOCCS has records of her residence from her arrest in May 2002 until the end of her parole in June 2009. Id. ¶¶ 17–19.

In May 2008, Tromberg moved for a default judgment against plaintiff, alleging that plaintiff had been personally served but failed to respond to CFS's complaint or otherwise appear in the state court action. Mot. Default J., Ex. G [ECF No. 63-7]. Tromberg obtained a default judgment on CFS's behalf in the amount of $3,877.96. TAC ¶ 56; Default J., Ex. H [ECF No. 43-8]. CFS was put into receivership in 2010.[3] TAC ¶ 66. Under receivership, CFS assigned the putative judgment to defendant CAG in or around March 2013 and went out of business sometime thereafter. Id. ¶¶ 67–68.

Over twelve years later, on October 6, 2020, CAG engaged Tromberg to collect the judgment by, *inter alia*, garnishing plaintiff's wages. Id. ¶¶ 77–78. Tromberg's principal, defendant Stephen Einstein, signed an income execution that he provided to a marshal, who then served it on plaintiff's employer, Bedford Center for Nursing and Rehabilitation ("Bedford Center"). Id. ¶¶ 77–78, 80–81. The income execution directed Bedford Center to satisfy the judgment by withholding 10% of plaintiff's wages and paying that amount to the marshal in monthly installments. Id. ¶ 78; Income Execution, Ex. J [ECF No. 63-10]. On or around November 23, 2020, Bedford Center called plaintiff to notify her of the income execution. TAC ¶ 82. Plaintiff was not aware of the 2008 debt collection action or the default judgment prior to her call from her employer. Id. ¶¶ 57, 70. On that same day, plaintiff filed a *pro se* Order to Show Cause ("OSC") in state court to vacate the judgment against her. Id. ¶ 84. In the OSC, plaintiff alleged that she did

---
[3] Plaintiff alleges that prior to the receivership, CFS changed its name to Precision Recovery Analytics ("PRA") and refers to CFS as PRA thereafter. TAC ¶ 65; CFS Name Change Filing, Ex. BB [ECF No. 63-28].

not owe the debt, had been the "victim of identity theft or mistaken identity[,]" and was never served in the 2008 debt collection action, as she had "never lived at th[e] address" listed in the affidavit of service. Id. ¶¶ 85–86, 89; Order to Show Cause ("OSC"), Ex. K [ECF No. 63-11].

On or around November 24, 2020, Tromberg sent plaintiff a letter confirming receipt of the OSC and attached a copy of the 2008 default judgment. TAC ¶ 90. On November 29, 2020, Tromberg sent plaintiff a collection letter. Id. ¶ 92. On November 30, 2020, plaintiff sent Tromberg a letter stating that the debt did not belong to her and that she had never lived at the address in the default judgment. Id. ¶ 94.

On December 1, 2020, Tromberg filed its opposition to the OSC in state court. Id. ¶ 95. Tromberg attested to the validity of the default judgment and that the underlying action was to "recover unpaid credit card [debt]" from plaintiff, but it did not provide a copy of the affidavit of service. Id. ¶¶ 96, 98, 100. The state scheduled a traverse hearing to determine whether plaintiff had been properly served. Id. ¶¶ 112–14. At the traverse hearing on January 20, 2021, the parties stipulated to discontinue the underlying state court collection action. Id. ¶ 116.

Plaintiff alleges emotional damages, including shame and embarrassment caused by her employer's receipt of the income execution, and fear of losing her job after receiving write ups for "calling out excessively" to challenge the debt and constant questioning by her employer. Id. ¶¶ 117–20. She also alleges feeling very anxious during this period and needing to take medication to help her sleep. Id. ¶¶ 128–29. Plaintiff also alleges economic damages, including use of paid leave, travel expenses, and other costs related to appearing in court, as well as costs related to repairing her credit. Id. ¶¶ 121–22.

II. ABC Defendants' Process Server Practices

Plaintiff alleges that defendant Brodsky is the sole shareholder, president, and manager of ABC Process. TAC ¶ 134. In June 2008, around the time that Tromberg obtained a default judgment against plaintiff, Brodsky testified at a public hearing before the New York City Department of Consumer Affairs ("DCA") regarding ABC Process's business structure, policies, and practices. Id. ¶ 140; Brodsky Testimony, Ex. T [ECF No. 63-20]. Brodsky testified that process servers at ABC Process are independent contractors, and that the company pays them on a pay scale, starting at $3.00 per service in landlord-tenant cases. Brodsky Testimony, Ex. T at 134:2–135:14. Brodsky also testified that for "[m]ost of the collection agencies" that engage ABC Process to effectuate service, ABC Process does not pay the process server if the server is unable to complete service, because the collection attorneys "don't want to pay for [] returns" and if "you try to charge them for a return, they'll take their account and go elsewhere." Id. at 135:15–22, 136:23–137:10, 138:1–6.

In December 2011, ABC Process and the DCA entered into a consent order, by which ABC Process agreed to, *inter alia*, a monthly review of its records, including any disciplinary actions taken against its process servers or instances where the process server had not complied with the law. TAC ¶ 138; Consent Order, Ex. R [ECF No. 63-18]. In August 2013, the DCA denied ABC Process's application for temporary authority to operate as a process serving agency until it agreed to pay a fine of $70,000 and abide by the terms of the 2011 consent order. TAC ¶ 139.

In January 2013, the DCA issued a consent order against defendant Abderrahman, requiring him in all of his service of process to, *inter alia*, complete and maintain proper records in compliance with state and municipal law. Id. ¶ 52; Abderrahman 2013 Consent Order, Ex. E [ECF No. 63-5]. In December 2013, the DCA filed a notice of hearing charging Abderrahman

with, *inter alia*, seven counts of preparing false affidavits of service and two counts of failure to properly serve, among other violations. TAC ¶ 50; Notice of Hearing, Ex. D [ECF No. 63-4]. The notice cites seven false affidavits of service filed between 2009 and 2012, and in four out of the seven, Abderrahman claimed to serve process on a "relative" of the person to be served. TAC ¶ 51; Notice of Hearing, Ex. D [ECF No. 63-4 at 9–10]. In January 2014, the DCA revoked Abderrahman's process server license and banned him from reapplying for ten years. TAC ¶ 53; Abderrahman 2014 Consent Order, Ex. F [ECF No. 63-6].

## PROCEDURAL HISTORY

Plaintiff filed the instant action on August 27, 2021. ECF No. 1. On November 10, 2021, plaintiff requested a Certificate of Default as to defendant Abderrahman, ECF No. 26, and the Clerk of Court noted entry of default thereafter. ECF No. 28. On April 22, 2022, plaintiff amended the complaint to add claims against Jay Brodsky, ABC Process, and Abderrahman. ECF No. 43. Plaintiff amended the complaint again on January 24, 2023, ECF No. 61, and for a third time on February 1, 2023, ECF No. 63. Defendants Tromberg, Einstein, and CAG have answered the third amended complaint ("TAC"). ECF Nos. 68–69.

The ABC defendants now move to dismiss the claims against them. Defs. Mot. [ECF No. 77]. Plaintiff opposes the motion. Pl. Opp'n [ECF No. 78].[4] The ABC defendants have replied. Defs. Reply [ECF No. 79].

## LEGAL STANDARD

The ABC Defendants move to dismiss the claims against them pursuant to Rule 12(b) of the Federal Rules of Civil Procedure "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept

---

[4] Plaintiff filed a second set of opposition papers on May 26, 2023, at ECF Nos. 80–81, that is virtually identical to the opposition papers filed at ECF No. 78. The Court cites to ECF No. 78 for purposes of this motion.

6

all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. A plaintiff must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). If a plaintiff does not "nudge[] [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570.

In deciding a motion to dismiss, the Court may consider documents attached to the pleadings, documents referenced in the complaint, documents that plaintiff relied on in bringing the action which were in plaintiff's possession or of which plaintiff had knowledge, and matters of which judicial notice may be taken. Chambers, 282 F.3d at 152–53.

## DISCUSSION

### I. Fair Debt Collections Practices Act (FDCPA)

To state a claim under the FDCPA, a plaintiff must sufficiently allege that defendant is a 'debt collector' within the meaning of the FDCPA. See Schuh v. Druckman & Sinel, L.L.P., 751 F. Supp. 2d 542, 548 (S.D.N.Y. 2010) (citation omitted). The FDCPA defines a debt collector as "any person…who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6); see also Obduskey v. McCarthy

7

& Holthus LLP, 139 S. Ct. 1029, 1036 (2019) (quoting Section 1692a(6)). The term is not limited to formal debt collection agencies and may extend to other entities that regularly try to enforce consumer debts. Heintz v. Jenkins, 514 U.S. 291, 293 (1995) (holding that the FDCPA's definition of 'debt collector' applies broadly to anyone "'regularly' engage[d] in consumer-debt-collection activity[.]").

The FDCPA contains several exemptions from its definition of 'debt collector', including "any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt." 15 U.S.C. § 1692a(6)(D). A person who is merely "serving the [debt collection] communication on the consumer—in effect…being [a] messenger"—is exempt. Romea v. Heiberger & Assocs., 163 F.3d 111, 117 (2d Cir. 1998). However, the process server exemption does not apply when a person "goes beyond being merely a messenger and engages in prohibited abusive or harassing activities to force an individual to repay a debt[.]" Sykes v. Mel Harris and Associates, LLC, 757 F. Supp. 2d 413, 423 (S.D.N.Y. 2010) (citation, internal quotation marks and alterations omitted). Such activities include false or fraudulent practices to "purposefully ensure[] that a party is never served." Id. at 422. Courts in this Circuit have found that "the practice of obtaining a default judgment by filing false affidavits of service, colloquially referred to as 'sewer service,' presents an actionable claim under the FDCPA." Carroll v. U.S. Equities Corp., No. 18-CV-667, 2019 WL 4643786, at *7 (N.D.N.Y. Sept. 24, 2019) (collecting cases); see also Coble v. Co hen & Slamowitz, LLP, 824 F. Supp. 2d 568, 570 (S.D.N.Y. 2011) (finding a plausible FDCPA claim where defendants were on notice of false affidavits filed as part of their collections actions); see also Makhnevich v. Bougopoulos, No. 18-CV-285, 2022 WL 939409, at *10 (E.D.N.Y. Mar. 29, 2022) (noting that sewer service "can violate several provisions of the FDCPA."); see also Bowens v. LR Credit 10, LLC, No. 07-CV-

459, 2011 WL 6208303, at *3 (W.D.N.Y. Dec. 14, 2011) ("failing to serve process and perjuring affidavits of service…violates the FDCPA.").

Here, plaintiff alleges ABC Process[5] regularly engaged defendant Abderrahman as its process server during the relevant time period and engaged Abderrahman to serve process on plaintiff in the underlying state court action. TAC ¶¶ 11, 153–57. In the affidavit of service, Abderrahman attests to serving plaintiff at an address where she never lived by providing a copy of the summons and complaint to "Lauren, Relative." Id. ¶¶ 44–48. The address is a problem, and that plaintiff does not have a relative named Lauren or a relative who matches the affidavit's description is another problem. Plaintiff's allegations in the TAC are sufficient to create a reasonable inference of 'sewer service' in violation of the FDCPA. See Scott v. Greenberg, No. 15-CV-05527, 2017 WL 1214441, at *2, *11 (E.D.N.Y. Mar. 31, 2017) (denying motion to dismiss where defendant filed a false affidavit reporting service on a Jane Doe whose description did not match the description of plaintiff or any co-tenant); cf. Lewis v. Legal Servicing, LLC, No. 19-CV-8085, 2022 WL 2531817, at *8 (S.D.N.Y. Mar. 15, 2022), Report and Recommendation adopted sub nom., Lewis v. Steward, No. 19-CV-8085, 2022 WL 4592641 (S.D.N.Y. Sept. 30, 2022) (granting dismissal where plaintiff failed to allege that plaintiff did not reside at the address where plaintiff was served and acknowledged that the "Jane Doe" description in the affidavit matched the description of a co-tenant).

---

[5] Plaintiff does not bring a FDCPA claim against defendant Brodsky, because her federal claims as to him "may be time barred." TAC ¶ 179 n.3. Defendants have not raised the issue of whether any claims against defendant ABC Process may also be time barred. Given defendants have not raised a statute of limitations defense, the defense is waived. See Alausa v. Monterey Fin. Servs., LLC, No. 22-CV-3814, 2023 WL 6121780, at *7 (E.D.N.Y. Sept. 19, 2023) (finding defendants waived a FDCPA statute of limitations defense by failing to raise it in their initial motion to dismiss); see also Muia v. Brookview Rehab Funding, LLC, No. 10-CV-1315, 2012 WL 1014753, at *3 (N.D.N.Y. Mar. 23, 2012) ("Second Circuit case law has made clear that the statute of limitations is considered a defense that is generally waived if not raised 'at the earliest possible moment.'" (quoting Santos v. Dist. Council of N.Y. City & Vicinity of United Bhd. of Carpenters & Joiners of Am., AFL–CIO, 619 F.2d 963, 967 n. 5 (2d Cir. 1980))).

ABC Process does not dispute that Abderrahman engaged in 'sewer service' but argues it is not liable for his conduct, because plaintiff has not plausibly alleged ABC Process knew or should have known that the affidavit was false. Defs. Mem. of Law at 7 [ECF No. 77-1]. ABC Process contends that it could not have known about the false affidavit—filed in 2008—because the DCA did not issue a "notice of hearing" regarding Abderrahman's practices until 2013. Id. However, the DCA's notice, attached as an exhibit to the TAC, cites false affidavits filed as far back as 2009. Notice of Hearing, Ex. D [ECF No. 63-4 at 9–10]. Additionally, and perhaps more relevant to the question of ABC Process's knowledge, are the allegations regarding Brodsky's testimony in 2008, and enforcement actions taken against ABC Process in 2011 and 2013 (including DCA monitoring its activities, imposing a $70,000 fine, and revoking its temporary authority to operate as a process serving agency). TAC ¶¶ 138–49. These allegations regarding ABC Process's own misconduct plausibly demonstrate that ABC Process knew or should have known of Abderrahman's practice of sewer service and the false affidavit filed in the underlying debt collection case.

ABC Process also attempts to distinguish the underlying facts in Sykes from the facts alleged in this case by arguing that the Sykes court found "the process server company was a 'debt collector' because the other defendants regularly hired it to serve process, it was paid only for service attempts that were reported completed, and more than ninety percent of the persons who were sued defaulted because they were not actually served," and that "no such facts are present here." See Defs. Mem. of Law at 6–7. Defendant is correct that the plaintiffs in Sykes made pattern-or-practice allegations that were noted in the court's decision. 757 F. Supp. 2d at 419. However, the court did not rely on these allegations to find defendants were 'debt collectors' under the FDCPA. Rather, it relied on allegations that the defendants had "fail[ed] to serve plaintiffs

process and provi[ded] perjured affidavits of service" in the underlying debt collection cases specific to the plaintiffs' claims. Sykes, 757 F. Supp. 2d at 423. Indeed, the Sykes decision did not need to rely on pattern-or-practice allegations to find a plausible FDCPA claim, as the FDCPA is a "strict liability statute" where even "a single violation…is sufficient to impose liability." Castro v. Green Tree Servicing LLC, 959 F. Supp. 2d 698, 707 (S.D.N.Y. 2013) (citation and internal quotation marks omitted); see also Baltazar v. Houslanger & Assocs., PLLC, No. 16-CV-4982, 2018 WL 3941943, at *5 (E.D.N.Y. Aug. 16, 2018), Report and Recommendation adopted, No. 16-CV-4982, 2018 WL 4781143 (E.D.N.Y. Sept. 30, 2018) (same).

Finally, defendant asserts that Abderrahman was its independent contractor and not an employee, and thus it cannot be liable for his misconduct.[6] Defs. Mem. of Law at 2, 4. Although the FDCPA is silent on the issue, courts in this Circuit as well as others generally use one of two tests to determine whether a principal can be held vicariously liable for the conduct of its agent under the statute: "[s]ome [c]ourts require that a debt collector 'exercise control' over the [agent], while others require only that the agent be acting 'within the scope their authority.'" Linda Chun v. Midland Funding, LLC, No. 20-CV-759, 2021 WL 216073, at *3 (E.D.N.Y. Jan. 21, 2021) (quoting Polanco v. NCO Portfolio Mgmt., Inc., 132 F. Supp. 3d 567, 585 (S.D.N.Y. 2015)); see also Gomez v. Resurgent Cap. Servs., LP, 129 F. Supp. 3d 147, 156–57 (S.D.N.Y. 2015) (reviewing the FDCPA's legislative history and applying vicarious liability theory such that defendants were liable for "FDCPA violations committed by agents acting on their behalf, whether or not they exercised direct control over them."); see also Meola v. Asset Recovery Sols., LLC, No. 17-CV-1017, 2018 WL 5020171, at *7 (E.D.N.Y. Aug. 15, 2018), Report and

---

[6] While defendants assert Abderrahman's independent contractor status as a defense to plaintiff's negligence claims, *infra*, they assert the argument more generally in the 'facts' and 'introduction' sections of their memorandum of law, and thus raise it presumably as a defense to all of plaintiff's claims. Defs. Mem. of Law at 2, 4.

11

Recommendation adopted, No. 17-CV-1017, 2018 WL 4660373 (E.D.N.Y. Sept. 28, 2018) ("Although the Supreme Court has not directly ruled on vicarious liability in the FDCPA context, there is no reason to suppose that Congress or the Court would require 'an FDCPA plaintiff show specific acts of control when considering a debt collection company's liability for its [agent's] actions.'" (quoting Okyere v. Palisades Collection, LLC, 961 F. Supp. 2d 508, 516 (S.D.N.Y. 2013)); but see Bodur v. Palisades Collection, LLC, 829 F. Supp. 2d 246, 258 (S.D.N.Y. 2011) ("To be vicariously liable under the FDCPA…the 'principal' must exercise control over the conduct or activities of that 'agent'." (citation and internal quotation marks omitted) (collecting cases)).

Here, plaintiff alleges that Abderrahman was "acting within the course and scope of his employment with ABC." TAC ¶ 12. Defendant does not dispute that Abderrahman's actions amount to violations under the FDCPA, or that he was serving process on ABC Process's behalf and had its permission to do so. Id. ¶¶ 11–12. Thus, plaintiff has adequately pled that Abderrahman acted within the scope of ABC Process's authority, "whether or not [it] actually exercised direct control over [him]." Gomez, 129 F. Supp. 3d at 156 ("The assignee, as the party whose authority the groundlevel debt collector is utilizing and the party who stands to benefit from any aggressive tactics, can be held liable under traditional common-law principles.").

Even under the heightened standard of 'control' applied by some courts in this Circuit, plaintiff alleges, if just barely, that Abderrahman had "employment" with ABC Process, and thus ABC Process exercised some level of control over Abderrahman's actions. TAC ¶ 13. Defendants argue that this allegation in the TAC contradicts Brodsky's testimony attached to the TAC, in which Brodsky testified that all of defendants' process servers were independent contractors. Defs. Reply at 6–7; see Brodsky Testimony, Ex. T at 133:13–22. However, this inconsistency "[is] not

[a] blatant contradiction[], and there is no evidence of an intent to manipulate the pleadings to avoid a dispositive defense." Di Simone v. CN Plumbing, Inc., No. 13-CV-5088, 2014 WL 1281728, at *3 (E.D.N.Y. Mar. 31, 2014). If anything, it "highlight[s] the need for further proceedings to facilitate a just adjudication on the merits." Eisen v. Pulaski Furniture Corp., No. 05-CV-1440, 2006 WL 908446, at *1 (D. Conn. Apr. 4, 2006).

Moreover, the issue of whether Abderrahman was an independent contractor or employee is "likely to be heavily fact-intensive and inappropriate for resolution at the motion to dismiss stage." Dejesus v. HF Mgmt. Servs., LLC, No. 12-CV-1298, 2012 WL 5289571, at *2 (E.D.N.Y. Oct. 23, 2012), aff'd, 726 F.3d 85 (2d Cir. 2013); see also Thomas v. TXX Servs., Inc., No. 13-CV-2789, 2014 WL 13063522, at *4 (E.D.N.Y. Apr. 14, 2014) ("[A] person's status as an employee or an independent contractor is a fact-intensive inquiry…."). Accepting plaintiff's allegations as true as the Court must,[7] the Court should find that the allegations are sufficient, if only just, to show that ABC Process controlled or had the right to "control the manner or means" of Abderrahman's performance of work and thus may be held liable under the FDCPA. Freeman v. ABC Legal Servs. Inc., 827 F. Supp. 2d 1065, 1076 (N.D. Cal. 2011) (finding it plausible that the defendant process serving agency had control over its independent contractor process servers and thus was liable under the FDCPA).

Accordingly, the Court should deny ABC Process's motion to dismiss plaintiff's FDCPA claim.

---

[7] See Chambers, 282 F.3d at 155 ("when a district court considers certain extra-pleading materials and excludes others, it risks depriving the parties of a fair adjudication of the claims by examining an incomplete record."); see also Goldberg v. Danaher, 599 F.3d 181, 183 (2d Cir. 2010) (A Rule 12(b)(6) motion "presents a pure legal question, based on allegations contained within the four corners of the complaint[.]")

## II. New York State Law Claims

### A. N.Y. General Business Law ("NYGBL") § 349 et seq.

To assert a claim under Section 349 of the NYGBL, plaintiff must show that (1) defendants' conduct is "consumer-oriented," (2) such conduct is materially deceptive or misleading, and (3) plaintiff suffered injury as a result of the allegedly deceptive conduct. Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 124 (2d Cir. 2017). Here, defendants do not dispute that plaintiff suffered an injury but contend that plaintiff has not sufficiently pled that defendants' conduct was consumer-oriented, or was materially deceptive or misleading.

A plaintiff can show that conduct is "consumer-oriented" if it "potentially affect[s] similarly situated consumers." Guzman v. Mel S. Harris & Assocs., LLC, No. 16-CV-3499, 2018 WL 1665252, at *12 (S.D.N.Y. Mar. 22, 2018). "The requirement that defendants engage in consumer-oriented conduct has been construed liberally." Aghaeepour v. N. Leasing Sys., Inc., No. 14-CV-5449, 2015 WL 7758894, at *14 (S.D.N.Y. Dec. 1, 2015), order corrected on denial of reconsideration, No. 14-CV-5449, 2016 WL 828130 (S.D.N.Y. Feb. 25, 2016) (citation omitted). Plaintiff need not show a "repetition or pattern of deceptive conduct" but must demonstrate that the "acts or practices have a broader impact on consumers at large." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 64 (2d Cir. 2010) (citation and international quotations omitted). The "critical question" in determining whether conduct is "consumer-oriented" is whether the conduct alleged "affects the public interest in New York." Hunter v. Palisades Acquisition XVI, LLC, No. 16-CV-8779, 2017 WL 5513636, at *7 (S.D.N.Y. Nov. 16, 2017). While "private contract disputes unique to the parties do not fall within the ambit of the statute[,]" a plaintiff need not wait until a defendant's conduct harms other individuals so long as "the conduct has the

potential to affect similarly situated consumers." Scott, 2017 WL 1214441, at *16 (citations, internal quotation marks, and alterations omitted).

Courts in this Circuit have found that a plaintiff who alleges sewer service states a claim under Section 349. Id.; see also Hunter, 2017 WL 5513636, at *8 (finding plaintiff sufficiently pled defendants obtained a judgment against her via sewer service and engaged in a pattern of attempting to collect on judgments in a similar manner); see also Mayfield v. Asta Funding, Inc., 95 F. Supp. 3d 685, 703 (S.D.N.Y. 2015) (finding allegations of sewer service sufficient to bring a claim under the NYGBL). Plaintiff here alleges defendant ABC Process "regularly fails to serve summons and complaints, and regularly executes false affidavits of service allowing the entry of default judgments against putative debtors." TAC ¶ 10. These allegations are sufficient to show that defendants engaged in "consumer-oriented" conduct under Section 349 of the NYGBL.

Likewise, plaintiff plausibly alleges defendants' conduct was materially deceptive or misleading, because of its likelihood to impede her ability to challenge the debt and/or dispute its collection. Whether an act or omission is "materially misleading" hinges on whether it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." Nick's Garage, Inc., 875 F.3d at 124. Courts have found that sewer service is deceptive under Section 349 of the NYGBL. Mayfield, 95 F. Supp. 3d at 700. Here, plaintiff alleges that defendants executed the false affidavit in such a way that she as a consumer without legal education would have no way of knowing that it was not valid. See Midland Funding LLC v. Giraldo, 39 Misc. 3d 936, 961 (Dist. C. 2013) ("A consumer, unschooled in the law, could be readily deceived into believing that the plaintiff would not be bringing the lawsuit unless it either possessed evidentiary proof of the claim, or could easily obtain such proof").

Plaintiff also plausibly alleges injury resulting from defendant's conduct. "Section 349 requires proof of 'some injury' that need not be 'necessarily pecuniary.'" Guzman, 2018 WL 1665252, at *12 (quoting S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp., 84 F.3d 629, 637 (2d Cir. 1996). "Emotional harm…satisf[ies] the injury requirement" for a claim under Section 349. Douyon v. N.Y. Med. Health Care, P.C., 894 F. Supp. 2d 245, 264 (E.D.N.Y. 2012), amended on reconsideration, No. 10-CV-3983, 2013 WL 5423800 (E.D.N.Y. Sept. 25, 2013). Here, plaintiff alleges economic damages, including use of leave time and out of pocket expenses to appear in court to challenge the default judgment against her, as well as emotional damages, including feelings of embarrassment, shame, discouragement, and anxiousness; inability to fall asleep without medication; and fear of losing her job. TAC ¶¶ 117–33.

The ABC defendants have not provided any cases or otherwise persuaded the Court that plaintiff's claim under Section 349 of the NYGBL should be dismissed. Therefore, the Court should deny defendants' motion to dismiss plaintiff's Section 349 claim.

### B. New York City Administrative Code ("N.Y.C. Admin. Code") § 20-409.2

Plaintiff also alleges defendants failed to act in accordance with the laws and rules governing service of process in New York state, and alleges plaintiff was proximately harmed as a result of these violations. TAC ¶ 223. Section 20-409.2 of the N.Y.C. Administrative Code permits a person injured by a process server's failure "to act in accordance with the law and rules governing service of process in New York State" to bring a "cause of action against such process server and process serving agency." N.Y.C. Admin. Code § 20-409.2. Section 20-404 defines 'process server' as "a person engaged in the business of serving or one who purports to serve or one who serves personally…upon any person…a summons…directing an appearance or response to a legal action, legal proceeding or administrative proceedings." N.Y.C. Admin. Code § 20-404.

A "process serving agency" is defined as "any person, firm, partnership, association or corporation, other than an attorney or law firm located in this state,…who maintains an office, bureau or agency, the purpose of which is to assign or distribute process to individual process servers for actual service in the city of New York." Id.

Plaintiff alleges Brodsky is a process server and ABC Process a process serving agency as defined by Section 20-404 and thus subject to Section 20-409.2. Plaintiff alleges the ABC defendants engaged in sewer service, and that she was harmed as a "direct and proximate result" of the ABC defendants' failure to comply with state and municipal law. TAC ¶ 224. Defendants have not advanced any persuasive arguments to warrant dismissal. Accordingly, the Court should deny defendants' motion to dismiss plaintiff's City law claims under Section 20-409.2.

**C. Common Law Claims (Negligence & Gross Negligence)**

Plaintiff also alleges that the ABC defendants were negligent or grossly negligent in selecting, hiring, training, supervising, and using Abderrahman to serve process. TAC ¶¶ 135, 206. "To sustain a claim for negligence, a plaintiff must show that the defendant owed the plaintiff a cognizable duty of care, that the defendant breached that duty, and that the plaintiff suffered damages as a proximate result of that breach." King v. Crossland Savings Bank, 111 F.3d 251, 259 (2d Cir. 1997). Whether defendants owed plaintiff a duty of care is contingent on the relationship between them and Abderrahman as their process server. If the ABC defendants "stand[] in an agency relationship" with Abderrahman, they can be held liable for his "negligent acts via the principle of vicarious liability." Colorado Cap. v. Owens, 227 F.R.D. 181, 188 (E.D.N.Y. 2005). If Abderrahman is an independent contractor, defendants cannot be liable for his negligence unless plaintiff can plausibly allege that defendants were themselves "negligent in selecting, instructing, or supervising" him. Becker v. Poling Transp. Corp., 356 F.3d 381, 389 (2d Cir. 2004), as modified

(Feb. 27, 2004). "The crucial factor in finding the existence of an agency relationship, versus one merely of an employer-independent contractor, is whether [ABC Process] exerts some control" over Abderrahman's actions. Colorado Cap., 227 F.R.D. at 188.

In moving to dismiss plaintiff's negligence claims, defendants merely reiterate their argument that Abderrahman was an "independent contractor, not an employee," a process server in "good standing" with the DCA, and that "none of the complaints later made against him had been made" at the time of the underlying debt collection lawsuit. Defs. Mem. of Law at 9–10. However, as discussed above, whether Abderrahman was hired as an employee or independent contractor is a fact-intensive inquiry inappropriate for resolution at this stage. See Section I, *supra*. Furthermore, plaintiff raises a plausible inference that defendants were themselves negligent in hiring, supervising, and training the process servers it used during the relevant period. Accordingly, the Court should deny defendants' motion to dismiss plaintiff's negligence claims.

**D. Jay Brodsky in his Individual Capacity**

Plaintiff alleges that Brodsky is "personally liable for the process server misconduct" alleged. TAC ¶ 136. Defendants argue that plaintiff fails to allege sufficient facts to pierce the corporate veil and that Section 20-409.2 "confers no right to pierce the corporate veil" such that Brodsky can be held individually liable. Defs. Mem. of Law at 3, 10–11. However, "'courts in this Circuit have routinely found that employees of debt collectors can be held liable where they personally participate in conduct that violates'…[the NYGBL], regardless of whether the corporate veil is pierced." Guzman, 2018 WL 1665252, at *8 (quoting Mayfield, 95 F. Supp. 3d at 702 (collecting cases)). The same is true for plaintiff's other state law claims.

Plaintiff here alleges Brodsky personally participated in the deceptive and/or fraudulent activities of this case, beyond "mere awareness or control." Reynolds v. Lifewatch, Inc., 136 F.

18

Supp. 3d 503, 526 (S.D.N.Y. 2015) (collecting cases). She alleges that Brodsky is the sole shareholder, president, and manager of ABC Process and has set it up to hire "almost exclusively process servers who have repeatedly been disciplined or…had their licenses revoked in process serving." TAC ¶¶ 134–36. Brodsky also notarized the false affidavit of service on plaintiff attached to the TAC. Aff. of Service, Ex. C. In addition, plaintiff alleges that Brodsky publicly testified to ABC Process's policies and practices in 2008, and that agency was later disciplined and fined by New York City pursuant to a consent order. TAC ¶ 119–121.

These allegations are sufficient to plausibly claim at this stage of the proceedings that Brodsky was personally involved in ABC Process's business and thus subject to liability. Guzman, 2018 WL 1665252, at *8 (finding sole shareholder and officer of process serving agency who regularly notarized affidavits of service was "personally involved in the conduct at issue to be held liable under the FDCPA" and supplemental claims). Thus, the Court should deny Brodsky's motion to dismiss plaintiff's claims against him.

## CONCLUSION

Accordingly, it is respectfully recommended that the ABC defendants' motion to dismiss plaintiff's third amended complaint should be denied.

**FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: November 20, 2023
       Brooklyn, New York