Case 1:21-cv-04845-RPK-SDE    Document 110-1    Filed 03/31/26    Page 1 of 7 PageID #: 4249

2026 WL 851338
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

ERIKA WILSON, Plaintiff,

v.

SELIP & STYLIANOU,
LLP ET AL Defendants.

24-cv-4108 (ALC)
|
Filed 03/27/2026

### OPINION & ORDER

ANDREW L. CARTER, JR. United States District Judge

**\*1** Plaintiff Erika Wilson brings this action against Defendants Selip & Stylianou, LLP ("Selip"), J&E Process Servers ("J&E"), and Benjamin Lamb ("Lamb") alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. and New York General Business Law § 349 et seq.; for Lamb and J&E's violations of N.Y.C. Admin. Code § 20-409.2; and for Selip's violations of New York Judiciary Law § 487 et seq. and for common law claims. Defendants Selip, J&E, and Lamb now move for dismissal of Plaintiff's First Amended Complaint ("FAC") pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 88, 91, and 94. After careful review, Defendants' Motions are **DENIED**.

### BACKGROUND

#### I. Factual Background

Plaintiff's claims arise from a debt collection suit commenced in Bronx County Civil Court by Defendant Selip, a law firm, on behalf of Synchrony Bank on May 30, 2023, titled *Synchrony Bank v. Erika N. Wilson*, Index No. CV-05361-23/BX (Collection Suit). FAC ¶ 2. To obtain an affidavit of service in the Collection Suit, Selip hired Defendant J&E, a process service agency licensed with the New York City Department of Consumer and Worker Protection ("DCWP", which in turn contracted Defendant Lamb, a process server. *Id* ¶ 21. Though Lamb had been fined and suspended by the DCWP in the past, the DCWP never revoked his license. (*Id*. ¶¶ 51-56, Exs. "E", "F", "G", "H", "I", "J", "K").

On June 21, 2023, J&E filed an affidavit of service with the Civil Court wherein Lamb swore that he served Wilson at 3540 Decatur Ave., Apt. 1G, Bronx NY 10467, by delivering a copy of the Collection Complaint via substitute service to co-resident "Chante Wilson" on June 8, 2023 at 3:16 pm and mailing a separate copy to Wilson at the same address on June 16, 2023 (the "Affidavit of Service"). *Id*. ¶¶ 62, 64, 66-67, Ex. M. No one with the name "Chante Wilson" exists at that address. *Id*. ¶ 70. Plaintiff's only co-resident was her mother. *Id*. ¶ 69. On June 8, 2023, Plaintiff and her mother were both in the Neonatal Intensive Care Unit of Mount Sinai West, watching over Plaintiff's two-day-old daughter. *Id.* ¶ 71. Plaintiff was never served with the summons and complaint in the debt collection suit, neither via a "co-resident" nor by mail. *Id*. ¶ 68. In 2023, Defendant Lamb alleged substitute service in 98% of the cases for which J&E contracted him. *Id.* ¶ 120. Plaintiff alleges that Defendants J&E and Selip both had access to Lamb's records, which showed he also claimed to serve a second person at a different address via substitute service just five minutes after he claimed to serve "Chante Wilson." *Id.* ¶ 148.

Plaintiff contends that Lamb has a history of improper service. *See Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015) (affirming the certification of a class action in which Lamb and other process servers engaged in a "sewer service" scheme to perform purposeful improper service in order to generate default judgments). In granting class certification, the Court highlighted Lamb's claims of service at more than one location at the exact same time and his claims of service that were "made so close in time that it would have been impossible for the process server to travel from one location to the other as claimed" as substantial support for the claim that Lamb engaged in sewer service. *Sykes v. Mel Harris & Assocs.*, LLC, 285 F.R.D. 279, 284 (S.D.N.Y. 2012).

**\*2** Plaintiff did not learn about Selip's Collection Suit until she received the Notice of Form from the court in July 2023. *Id*. ¶¶ 4, 66-74. She alleges that the Notice Form distressed her because, *inter alia*, "she did not know how to respond to a lawsuit" or "where to get the court papers," and "[s]he was afraid she would be arrested." *Id*. ¶¶ 8, 135. While caring for a newborn, Plaintiff sought legal assistance from CAMBA Legal Services in Flatbush, Brooklyn. Plaintiff's Opposition ("Pl. Opp.") at 4.

On December 6, 2023, Plaintiff moved to dismiss the Collection Action based upon improper service, traveling from the Bronx to Brooklyn to sign papers for the Motion. FAC ¶ 139-140. Plaintiff and her mother each submitted an affidavit in support of the Motion to Dismiss, alleging that they were the only residents of the Apartment on June 8, 2023, and that neither of them was home at 3:16 pm when service was made because Plaintiff gave birth days earlier and was still at the hospital, with her mother visiting. FAC, Ex. BB [Affs. of Erika and Shemin Wilson]. Selip opposed the Motion and twice attempted to leverage discontinuance of the Collection Suit to secure a waiver of claims, first as to Selip, Synchrony Bank – the plaintiff in the Collection Suit – and all their agents, and later just as to Selip and Synchrony. *Id.* ¶¶ 143-150. On June 3, 2024, Wilson and Synchrony stipulated, through counsel, to discontinue the Collection Action without prejudice. (Marshall Decl., Exhibit "3").

### II. Procedural History

Plaintiff filed her Complaint on May 29, 2024. ECF No. 1. On August 2, 2024, Defendant J&E answered the Complaint and included cross-claims against Defendants Selip and Lamb.[1] ECF No. 28. After a March 13, 2025 telephonic conference, the Court set a deadline for Plaintiff's Amended Complaint and Defendants' respective motions to dismiss. Plaintiff filed her Amended Complaint on April 3, 2025. ECF No. 74. Defendants filed their Motions to Dismiss on August 8, 2025. ECF Nos. 90, 92, 96. Plaintiff filed her Opposition on September 26, 2025. ECF No. 101. On November 7, 2025, Defendants filed their Replies. ECF Nos. 106-108.

### STANDARD OF REVIEW

When presented with motions to dismiss on both 12(b)(1) and 12(b)(6) grounds, a court must first decide the 12(b)(1) motion because defenses and objections are moot if the court does not have subject matter jurisdiction over the complaint. *See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n,* 896 F.2d 674, 675 (2d Cir. 1990). A case may be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). A court may refer to evidence outside the pleadings in resolving a motion to dismiss for lack of subject matter jurisdiction. *Id.* "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.*

When resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiffs' favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.,* 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citations omitted). Thus, "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal,* 556 U.S. at 678. The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir. 1985).

### DISCUSSION

I. Plaintiff Has Standing to Bring Claims Against All Three Defendants

A. Standing for Claims Against Selip

**\*3** Standing requires that a plaintiff have (1) "suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *John v. Whole Foods Market Group, Inc.,* 858 F.3d 732, 736 (2d Cir. 2017) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)). Because standing is challenged on the basis of the pleadings, courts must accept as true all material allegations of the complaint and construe them in the Plaintiff's favor. *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche, LLP,* 549 F.3d 100, 106 (2d Cir. 2008).

An injury can be concrete in two separate ways. First, it can be tangible, like a monetary injury or a physical injury. *TransUnion v. Ramirez,* 594 U.S. 413, 425 (2021). Second, a plaintiff can have an intangible injury if the harm suffered "has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* at 417.

Plaintiff argues she suffered both tangible and intangible injuries, traceable to the Defendants' conduct. However, the Court need only find one kind of injury traceable to the Defendants to confer standing. Defendant Selip challenges injury-in-fact and traceability, arguing that Plaintiff's tangible harms are unrelated to Selip. Selip & Stylianou, LLP's Motion to Dismiss ("Selip MTD") at 9.

Plaintiff has a tangible harm because she suffered monetary loss as a result of Defendants' violations. Plaintiff had to expend time and money to travel to CAMBA Legal Services two times, the first for an intake and the second to execute an affidavit for her Motion to Dismiss the Collection Suit. FAC ¶¶ 10, 11, 138, 140. Selip does not challenge that Plaintiff's monetary loss was a tangible harm. Instead, Selip argues this monetary loss was not traceable to Selip's actions but rather to Defendant Lamb's. Selip MTD at 10.

To satisfy traceability, a plaintiff must plead "a causal connection between the injury and the defendant['s] conduct." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013). While the injury must be "fairly traceable" to a defendant's actions and "not the result of the independent action of some third party not before the court," *Lujan,* 504 U.S. at 560 (1992), the "fairly traceable" standard is "relatively modest," requiring something "lower than proximate cause." *Rothstein v. UBS AG*, 708 F.3d 82, 92 (2d Cir. 2013). Plaintiffs do not need to quantify how much of the harm is attributable to a specific defendant, let alone show that it is wholly attributable to that defendant, as long as they sufficiently show some reasonable connection between the defendants' conduct and their harm. *M.G. v. N.Y. State Off. of Mental Health*, 572 F. Supp. 3d 1, 12 (S.D.N.Y. 2021). "So long as the defendants have engaged in conduct that may have contributed to causing the injury, it would be better to recognize standing." *Backer ex rel. Freedman v. Shah*, 788 F.3d 341, 344 (2d Cir. 2015) (quoting *St. Pierre v. Dyer*, 208 F.3d 394, 402 (2015)).

In support of Plaintiff's claim that Selip knew Lamb was engaged in sewer service, Plaintiff outlines the service process Selip undertakes in bringing a collection suit. When Selip brings cases, they purchase index numbers in batches of consecutive numbers, which they then send to process server agencies and eventually a specific process server. When Selip later receives the affidavits of service, they get a stack processed by the specific process server, in this case Lamb. Pl. Mot. at 8. Plaintiff goes on to explain that Selip has to review the affidavits to know when an answer is due and

when a default will occur. *Id.* Because Selip acknowledges that Lamb had his license suspended, they were reasonably on notice that he might have been engaging in sewer service in the summer of 2023 when the allegations in this complaint occurred. FAC ¶¶ 51-56, Exs. "E", "F", "G", "H", "I", "J", "K").

**\*4** *Baptiste-Elmine v. Richland & Falkowski, PLLC,* 2025 WL 974346, at *13 (E.D.N.Y. Apr. 1, 2025) further supports Plaintiff's position. There, the court held that the homeowners' out-of-pocket costs – of having to meet with their attorneys to determine which amounts could be legally collected and to include a statute of limitations defense in their answer to the complaint – were "fairly traceable" to conduct of the law firm defendant. *Id.* at 8. The court found causation even though the goal of the defendant's scheme, the collection of time-barred monies, was not realized. Here, Defendant Selip argues that because there was no threat of default judgment at the time Plaintiff filed her Motion, her facts are not analogous to those in *Baptise-Elmine.* Selip & Stylianou, LLP's Reply ("Selip Rep.") at 4. The Court is persuaded by Plaintiff's assertion that her harm is similar to the harm of the homeowners in *Baptiste-Elmine*." Pl. Mot. at 9.

Thus, Plaintiff's harm is fairly traceable to Selip and she has standing to bring her claims.

B. Standing for Claims Against J&E

J&E also contends that Plaintiff does not have standing because her alleged harm is not traceable to them. The Court analyzes J&E's traceability contention similarly to that made by Selip. J&E is the process agency that Selip contracts with, who uses Lamb as the process server. J&E's employee, Melissa Cyran, notarizes the affidavits of service received by Lamb. Of the 39 affidavits Plaintiff reviewed in filing her Complaint, all were notarized by Cyran, and all were obtained by substitute service. Pl. Mot. at 20. Plaintiff argues that this should have been sufficient to tip J&E off that the affidavits were the result of sewer service. Taking Plaintiff's allegations as true, Plaintiff's harm of monetary loss incurred by traveling to and from her attorneys is fairly traceable to J&E.

J&E's other argument is that Plaintiff's tangible monetary harms are *de minimis*. Both Supreme Court and Second Circuit precedent reject this. "[T]he injury-in-fact necessary for standing need not be large; an identifiable trifle will

suffice." *Leyse v. Lifetime Ent. Servs., LLC*, 679 F. App'x 44, 46 (2d Cir. 2017) (quoting *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 105 (2d Cir. 2013)); *cf. Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016), *as revised* (Feb. 9, 2016) ("As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.") (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)). Therefore, Plaintiff has standing to bring claims against J&E.

C. Standing for Claims Against Lamb

Unlike Selip and J&E, Defendant Lamb does not distinguish his standing arguments based on tangible or intangible harm. He says that because Plaintiff timely appeared in the Collection Suit, moved to dismiss, and the suit was ultimately discontinued that her harm is only "speculative" or, at best, a "technical violation." Benjamin Lamb's Motion to Dismiss ("Lamb MTD") at 10-11. In support, Lamb cites to *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816 (5th Cir. 2022); *In re FDCPA Mailing Vendor Cases*, 551 F.Supp.3d 57 (E.D.N.Y. 2021) and *Maddox v. Bank of New York Mellon Trust Co.*, 19 F.4th 58 (2d Cir. 2021). In *Perez*, the Fifth Circuit held that the plaintiff did not have a tangible harm because she only alleged she was *at risk* for paying a time barred debt. 45 F.4th 816, 824 (5th Cir. 2022). This was considered a future harm that was too speculative. Plaintiff Wilson has alleged monetary losses of expenses incurred meeting with legal counsel. In *In re FDCPA Mailing Vendor Cases* and *Maddox*, the courts found that the plaintiffs had not alleged any tangible injuries. 551 F.Supp.3d 57 (E.D.N.Y. 2021); 19 F.4th 58 (2d Cir. 2021). These cases do not persuade the Court to side with Defendant Lamb. Plaintiff has alleged a tangible injury.

**\*5** Lamb argues that because no default judgment was ever entered against Plaintiff, she does not have standing. The Court finds *Onfroy v. Law Offices of Geoffrey T. Mott P.C.*, 751 F.Supp.3d. 195 (E.D.N.Y. Sept. 30, 2024) instructive. There, the defendants did not successfully collect the default judgment they sought, just as here. The court was still able to find standing because some harm did occur to plaintiff in the process of having to litigate their case.

Finally, like the other Defendants, Lamb claims that Plaintiff cannot trace her harm to Lamb. Lamb was the process server who allegedly falsified the affidavit of service with a person who does not exist. This easily meets the traceability standard

of causation. As to Lamb's contention that Plaintiff would have occurred costs regardless of whether the affidavit had been falsified, those facts are not before the Court. Plaintiff has standing to bring claims against Lamb.

II. Plaintiff's FDCPA Claims

The Plaintiff seeks to bring claims under 15 U.S.C. § 1692e (which prohibits deceptive conduct) and 15 U.S.C. § 1692f (which prohibits "unfair" and "unconscionable" conduct) by: (1) failing to lawfully effectuate service of process; (2) preparing and signing a false affidavit of service; (3) filing a false affidavit of service with the court; (4) filing a false affidavit of service without meaningful attorney review; and (5) in bad faith, unduly prolonging legal proceedings and continuing to preset the false affidavit of service as valid. "To state a claim under the FDCPA, a plaintiff must demonstrate that: (1) the plaintiff is a person who was the object of efforts to collect a consumer debt; (2) the defendant is a debt collector as defined in the statute; and (3) the defendant has engaged in an act or omission in violation of the FDCPA." *See Felberbaum v. Sequium Asset Sols.*, No. 21-cv-9513 (NSR), 2023 U.S. Dist. LEXIS 5619, at \*6 (S.D.N.Y. Jan. 11, 2023) (citing *Cohen v. Ditech Fin. LLC*, 15-CV-6828, 2017 U.S. Dist. LEXIS 43443, 2017 WL 1134723, at \*3 (E.D.N.Y. Mar. 24, 2017)). In addition, there is also a materiality requirement which considers "whether the false statement would frustrate a consumer's ability to intelligently choose his or her response." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 86 (2d Cir. 2018) (finding allegations of "mere technical falsehoods" insufficient as a matter of law to make out FDCPA claims). Because the FDCPA imposes strict liability on debt collectors, a consumer plaintiff need not prove intentionality on the part of the defendant debt collector. *See Lee v. Kucker & Bruh, LLP*, 958 F. Supp. 2d 524, 528 (S.D.N.Y. 2013); *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010).

Finally, under the law of this Circuit, reviewing courts are to employ the "least sophisticated consumer" test when assessing debt collection letters. *Taylor v. Fin. Recovery Servs.*, 886 F.3d 212, 214 (2d Cir. 2018) (citation omitted). When donning the persona of the "least sophisticated consumer" courts are to "possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Kolbasyuk v. Capital Mgmt. Servs. LP*, 918 F.3d 236, 239 (2d Cir. 2019). A debt collector violates the FDCPA under this test "if it is open to more than one reasonable interpretation, at least one of which is inaccurate." *Avila v. Riexinger & Assocs., LLC*, 817 F.3d

72, 75 (2d Cir. 2016) (quoting *Clomon v. Jackson,* 988 F.2d 1314, 1319 (2d Cir. 1993).

**\*6** The Court will start by noting that Defendant Lamb makes no arguments to dismiss any of Plaintiff's claims other than negligence, so the Court easily finds the FDCPA claims and other non-negligence claims survive against Lamb.

The most robust arguments to dismiss the FDCPA claims are made by Selip. Selip first argues by blaming Defendants Lamb and J&E. "It was Lamb who signed the 'false' Affidavit of Service and J&E who filed it with the Civil Court – not S[elip]." Selip MTD at 11. While J&E was perhaps closer in time to the false affidavit that Lamb generated, Selip was the law firm responsible for overseeing that Plaintiff was served properly. Plaintiff contends that Selip was familiar with J&E and Lamb, having used them repeatedly, and thus should have been on notice of the sewer service. Pl. Mot. at 23. A debt collection law firm may be held vicariously liable for its process server's practice of sewer service if it "knew the affidavits of service are highly likely to be false." *Sykes v. Mel S. Harris & Assocs. LLC,* 757 F. Supp. 2d 413, n. 9.

Plaintiff also argues that Selip doubled down on opposing her Motion and "on the date of oral argument on the Motion to Dismiss, Selip attempted to leverage discontinuance on the condition that Ms. Wilson agree to release all claims against Selip, Synchrony Bank, and their agents." FAC ¶ 143. The Plaintiff cites to *Villalba v. Houslanger & Assocs., PLLC,* No. 19-CV-4270-PKC-RLM, 2022 WL 900538, at \*19 (E.D.N.Y. Mar. 28, 2022), wherein a law firm refused to vacate an invalid sewer service judgment or return funds garnished pursuant to that judgment, prolonging the litigation for months. In that case, only on the date of the traverse hearing did the firm agree to vacate—on the conditions that they keep the garnished funds and the consumer sign a mutual release of claims. This is analogous to Selip's actions, where on the day of oral arguments, Selip finally agreed to discontinue. The Court finds the allegations against Selip sufficient to demonstrate it was actively participating in the scheme; it was not just Lamb and J&E.

Second, Selip argues that the FDCPA does not require a "meaningful attorney review" of an affidavit of service before it is first filed with a court. Selip MTD, at 11. In response, Plaintiff notes that Selip has obligations as an officer of the court to not file false documents. Pl. Mot. at 26. Additionally, Plaintiff states that their claim is that "Selip purposefully engaged a known practitioner of sewer service, willfully

ignored evidence that the affidavit of service was false, and allowed it to be filed on Selip's behalf so that Selip could attempt to obtain an invalid judgment against Ms. Wilson." *Id.* The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 1692a(2). Case law supports Plaintiff's view of having a claim under § 1692e(3) for allegations that documents were sent on behalf of an attorney without meaningful attorney involvement. For instance, in *Somerset v. Stephen Einstein & Assocs., P.C.,* the court denied the defendant debt collection law firm's motion to dismiss where the plaintiff alleged that "meaningful review of the underlying judgment would have revealed their reliance on sewer service in light of the agents used to obtain the default judgment. 351 F. Supp. 3d 201, 213 (E.D.N.Y. 2019). In this case, the false affidavit was a "communication" that Selip should have reviewed since it is the means by which someone alleged to have a debt learns of the complaint against them. Therefore, Selip needed to have engaged in "meaningful review."

**\*7** Selip asserts that the FDCPA does not apply where an attorney is interposed as an intermediary between a debt collector and a consumer. Selip MTD, at 11. However, as Plaintiff aptly points out, Plaintiff was unrepresented when the alleged sewer service occurred and upon receiving the notice from the court. Even still, the Court is persuaded by case law cited by Plaintiff that the FDCPA covers communications to counsel. *Rosa v. Mandarich L. Grp., LLP,* No. 22-CV-4720 (LJL), 2024 WL 871209 at \*9 (S.D.N.Y. Feb. 29, 2024) (quoting *Miljkovic v. Shafritz & Dinkin, P.A.,* 791 F.3d 1291, 1303 (11th Cir. 2015) (*citing* 15 U.S.C. § 1692c).

With respect to the "least sophisticated consumer" test, Selip says that Plaintiff was "certain that she had not been served," so her decisionmaking was unaffected by Selip's Opposition to her Motion to Dismiss or the affidavit. The Court is not convinced by this argument because Plaintiff still knew, regardless of the truth, she would need to prove she was right in court, which is not guaranteed.

Finally, Selip argues that its decision to continue with the case until oral arguments were scheduled was not "bad faith" but more akin to an obligation to zealously defend its client. Selip MTD at 12. Based off the facts alleged, this seems unlikely given how many similar likely false affidavits Selip had by way of J&E and Lamb. The attempt to get Plaintiff to waive claims also could be interpreted as bad faith. Plaintiff has

alleged enough at this stage that her FDCPA claims against Selip and J&E survive.

III. Plaintiff's GBL § 349 Claims

Under GBL § 349, "[a] plaintiff must allege that: (1) the defendant's conduct was consumer-oriented; (2) the defendant's act or practice was deceptive or misleading in a material way; and (3) the plaintiff suffered an injury as a result of the deception." *Himmelstein, McConnell, Gribben, Donoghue & Joseph LLP v. Matthew Bender & Co., Inc.*, 37 N.Y.3d 169, 176 (N.Y. 2021). "A defendant's actions are materially misleading when they are 'likely to mislead a reasonable consumer acting reasonably under the circumstances.' " *Himmelstein*, 37 N.Y.3d 169, 178 (quoting *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344 (1999)).

J&E does not argue that GBL § 349 should be dismissed, so the Court will focus only on Selip. Selip challenges whether Plaintiff has satisfied prong two, materiality, noting that, "conduct that is improper but does not mislead the plaintiff in a material way do not constitute "deceptive acts" within the meaning of GBL § 349. *Varela v. Investors Ins. Holding Corp.*, 81 N.Y.2d 958, 960 (N.Y. 1993); *Scarola v. Verizon Communications, Inc.*, 146 A.D.3d 692 (1st Dep't 2017) ("[D]efendant's continuing to bill plaintiff for telecommunications services, and harassing him for payment, after the relevant account was closed" was not " 'likely to mislead a reasonable consumer acting reasonably under the circumstances.' "). Plaintiff argues that Selip's conduct was materially misleading because the affidavit of service was false, and the firm's continued prosecution of the suit implied that service had been proper. Pl. Mot. at 32. In relying on *Varela,* Plaintiff states that Selip omits important context – "the defendant there was not contending that a judgment was valid, so its conduct was not objectively misleading." *Id.* at 33. Here, Selip repeatedly asserted that service was proper. Plaintiff has, therefore, made a claim against Defendants for GBL § 349.

IV. Plaintiff's Judiciary Law § 487 Against Selip

**\*8** To make a claim under Judiciary Law § 487, a plaintiff must allege that the defendant intentionally deceived the plaintiff or the court in a pending litigation, causing the plaintiff damages. *Jean v. Chinitz*, 163 A.D.3d 497 (1st Dep't 2018); *Doscher v. Mannatt, Phelps & Phillips, LLP*, 148 A.D.3d 523, 524 (1st Dep't 2017). "A cause of action under the statute 'requires a showing of 'egregious conduct or a

chronic and extreme pattern of behavior' on the part of the defendant attorneys that caused damages.' " *Remler v. Cona Elder Law*, PLLC, 2022 WL 4586243, at \*6 (E.D.N.Y. Sept. 29, 2022) (quoting *Facebook, Inc. v. DLA Piper LLP (US)*, 134 A.D.3d 610, 615 (1st Dep't 2015)). Here, Plaintiff alleges that she was deceived by Selip's filing a false affidavit of service and then continuing prosecution of the suit against her. Selip argues that the conduct alleged does not meet the egregious standard and also that in prosecuting the case against Plaintiff it was just following the law. Selip MTD at 14. Selip also cites to *Bill Birds, Inc. v. Stein Law Firm for support*, P.C., 35 N.Y.3d 173, 180 n.3 (N.Y. 2020) ("Judiciary Law § 487 does not encompass the filing of a pleading or brief containing nonmeritorious legal arguments, as such statements cannot support a claim under the statute."). *Bill Birds, Inc.* was a Court of Appeals decision, after summary judgment, that held § 487 does not apply to frivolous *legal* arguments such as attorneys' expressions of views concerning what the law is or should be, negligent legal research or the giving of questionable legal advice. *Id.* However, the Court of Appeals did find that 487 could apply to lawyers' engaging in "intentional deceit or collusion." *Id*.

The Court finds that Plaintiff has stated her allegations as to § 487 with particularity, carefully outlining Selip's role. *See infra* I.A, at 6. Finally, Selip argues Plaintiff does not plead cognizable damages because the travel costs associated with litigation were not caused by Selip. The Court has already addressed traceability in Section I.A. Therefore, the Court will not dismiss the § 487 claim against Selip.

V. Plaintiff's Negligence Claims

Plaintiff brings negligence and gross negligence claims against all the Defendants. To state a negligence cause of action, a plaintiff must allege 1) the existence of a duty on the defendant's part to the plaintiff, 2) a breach of this duty, and 3) injury to the plaintiff resulting from that breach. *Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp. 2d 402, 412 (E.D.N.Y. 2012)(*aff'd*, 529 F. App'x 45 (2d Cir. 2013)).

Defendants argue they had no duty to Plaintiff. Selip specifically says that, "[I]t is well settled 'that any attorney may not be held liable for negligence in the provision of professional services adversely affecting one with whom the attorney is not in contractual privity.' " *Ilkowitz v. Durand*, 2018 WL 1595987, at \*12 (S.D.N.Y. Mar. 27, 2018) (quoting *Natl. Westminster Bank USA v. Weksel*, 124 A.D.2d 144, 145 (1st Dep't 1987)). However, Plaintiffs contend that there is negligence per se under FDCPA and GBL § 349. *See*

Case 1:21-cv-04845-RPK-SDE    Document 110-1    Filed 03/31/26    Page 7 of 7 PageID #: 4255

e.g. *Sanchez v. Ehrlich*, No. 16-CV-8677 (LAP), 2018 WL 2084147, at *6–7 (S.D.N.Y. Mar. 29, 2018) (breach of duties under FDCPA and GBL § 349 constitute negligence per se). Both statutes apply to debt collectors, which all the Defendants are.

J&E tries to escape liability by arguing there is no duty for process service agencies to inspect their logbooks. J&E's Motion to Dismiss at 7. Plaintiff counters that all New York City process serving agencies must "be legally responsible for any failure to act in accordance with the laws and rules governing service of process by each process server to whom it has distributed, assigned or delivered process for service." N.Y.C. Admin. Code § 20-406.2(b). Pl. Mot. at 39. The Court is persuaded by Plaintiff's argument especially because J&E had worked extensively with Lamb and should have known his sewer service reputation. Therefore, at this time, the Court will not dismiss the negligence claims against any Defendants.

## CONCLUSION

For the foregoing reasons, Defendant's motion is **DENIED** without prejudice. The Clerk of Court is respectfully directed to terminate ECF Nos. 88, 91, and 94.

**SO ORDERED.**

**All Citations**

Slip Copy, 2026 WL 851338

## Footnotes

1  The cross-claims are not the subject of this Opinion.

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.