AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | | |
|---|---|---|
| Luz Texidor<br><br>*Plaintiff(s)*<br>v.<br><br>Tromberg, Morris & Poulin, PLLC f/k/a Stephen Einstein & Associates, P.C., Stephen Einstein, Collins Financial Services, Inc., ABC Process Serving Bureau, Inc. d/b/a ABC Proces<br>*Defendant(s)* | ) | Civil Action No. 1:21-cv-04845-RPK-LB |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* ABC Process Serving Bureau, Inc.
by and through the New York Secretary of State
One Commerce Plaza
99 Washington Avenue
Albany, NY 12231

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: The Law Office of Ahmad Keshavarz
16 Court Street, #2600
Brooklyn, NY 11241
emma@newyorkconsumerattorney.com
Cell: (917) 945-9848 Fax: (877) 496-7809

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

DOUGLAS C. PALMER
*CLERK OF COURT*

Date: 09/03/2021

s/ Aaron J. Herrera
*Signature of Clerk or Deputy Clerk*

**ABC000001**

Civil Action No. 1:21-cv-04845-RPK-LB

## PROOF OF SERVICE

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for *(name of individual and title, if any)*

was received by me on *(date)* .

❒ I personally served the summons on the individual at *(place)*

on *(date)* ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)*

, a person of suitable age and discretion who resides there,

on *(date)* , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* , who is

designated by law to accept service of process on behalf of *(name of organization)*

on *(date)* ; or

❒ I returned the summons unexecuted because ; or

❒ Other *(specify)*

My fees are $ for travel and $ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date:

*Server's signature*

*Printed name and title*

*Server's address*

Additional information regarding attempted service, etc:

ABC000003

Print | Save As... | Reset

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

**LUZ TEXIDOR,**

**Case No.: 1:21-cv-4845**

**Plaintiff,**

**-against-**

**TROMBERG, MORRIS, & POULIN, PLLC**
**f/k/a STEPHEN EINSTEIN & ASSOCIATES, P.C.,**
**STEPHEN EINSTEIN,**
**COLLINS FINANCIAL SERVICES, INC.,**
**ABC PROCESS SERVING BUREAU, INC., d/b/a**
**ABC PROCESS SERVICE and**
**AZZAM ABDERRAHMAN,**

**Defendants.**

---------------------------------------------------------------X

## COMPLAINT AND JURY DEMAND

Plaintiff brings this action for Defendants Tromberg, Morris, & Poulin, PLLC f/k/a Stephen Einstein & Associates, P.C., Stephen Einstein, Collins Financial Services, Inc., ABC Process Serving Bureau, Inc. d/b/a ABC Process Service, and Azzam Abderrahman's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* and New York General Business Law § 349 *et seq.*, and for Tromberg and Stephen Einstein's violations of New York Judiciary Law § 487 *et seq.*, and in support alleges as follows.

## SUMMARY OF CLAIMS[1]

Defendants are a debt collection law firm Tromberg, Morris, & Poulin, PLLC f/k/a Stephen Einstein & Associates, P.C. ("Tromberg"), a partner at the firm, Stephen Einstein, a putative assignee creditor and judgment creditor, Collins Financial Services ("CFS"), a process serving company, ABC Process Serving Bureau, Inc. d/b/a ABC Process Service ("ABC Process"), and its process server, Azzam Abderrahman.

1 This summary is for the convenience of Defendants and the Court. The summary is not intended to limit the basis of Plaintiff's claims as the full factual basis for the claims are laid out in far greater detail in the statement of facts.

In 2008, Defendant CFS, through Defendant law firm Tromberg and attorney Mr. Einstein filed a collection lawsuit that was time-barred. The very face of the verified complaint alleges the claim arose from "Credit Agreement with Plaintiffs predecessor in interest, American Investment Bank/Dell Computer." Therefore Defendants CFS, Tromberg, and Mr. Einstein knew, or certainly should know by engaging in a required meaningful attorney review of the account, that the suit sought to collect a putative debt arising from financing for the sale of goods from Dell Computer. The statute of limitations for the debts arising from the sale of goods is governed by UT ST § 70A-2-725, Utah's adoption of U.C.C. § 2-725, a four year statute of limitations that also applies in New York (N.Y. U.C.C. § 2-725) and most other states. However, the Complaint states the debt was allegedly in default for at least five years. And in any event, Ms. Texidor never owed the debt; it arose from the theft of her identity.

Worse still, Defendants CFS and Tromberg used a false affidavit of service to obtain a "sewer service"[2] default judgment in 2008. The process server, Defendant Abderrahman of Defendant ABC Service, is notorious for executing false affidavits of service, so much so that he was repeatedly sanctioned and ultimately had has license revoked for systematically executing false affidavits.

Twelve years later, October 6, 2020, Mr. Einstein, for CFS and Tromberg, relied on the sewer service judgment to sign an income execution to garnish Ms. Texidor's wages and had it served on the employer of Ms. Texidor. The garnishment attempt was the first time Ms. Texidor learned of the lawsuit or the judgment. Ms. Texidor, *pro se*, filed an Order to Show Cause (OSC) to vacate the default judgment. Defendants CFS and Tromberg doubled down. By 2020, Mr.

2 *See, e.g. Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 418 (S.D.N.Y. 2010) (""[S]ewer service" [is] the practice of failing to serve a summons and complaint and then filing a fraudulent affidavit attesting to service. When the debtors failed to appear in court because they did not have notice of the lawsuits, defendants obtained default judgments against them.")

Abderrahman's systematical sewer services was well documented and well known, and his process server license has been suspended since 2014. Despite this, CFS and Tromberg filed an Opposition to the OSC relying on (but coyly not attaching) the false affidavit of service to attempt to retain the illicit benefit of the fraudulently obtained judgment from a time-barred lawsuit by opposing Ms. Texidor's OSC. After weeks of stress, expenses for postage, copies, travel and notarization, lost time from work, Ms. Tromberg ultimately succeeded in having the default judgment vacated and the action discontinued.

Ms. Texidor now moves to hold to Defendants accountable. She brings suit against CFS, Tromberg, Mr. Einstein, Mr. Abderrahman and ABC Process for their violations of the Fair Debt Collection Practices Act and New York General Business Law § 349 *et seq.*, and against Tromberg and Mr. Einstein for their violations of New York Judiciary Law § 487 *et seq.*

## A. JURISDICTION AND VENUE

1. The Court has federal question jurisdiction over the lawsuit because the action arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA"). Jurisdiction of the Court arises under 28 U.S.C. § 1331 because this dispute involves predominant issues of federal law, the FDCPA. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202. The Court has supplemental jurisdiction under 28 U.S.C. §1367 ~~over~~ Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2. Venue in this District is proper because all or a substantial part of the events or omissions giving rise to their claims occurred in Kings County, New York.

## B. PARTIES

3. Plaintiff Luz Texidor is an individual currently residing in The Bronx County, New York.

4. Defendant Tromberg, Morris, & Poulin, PLLC f/k/a Stephen Einstein & Associates ("Tromberg") is a professional limited liability corporation organized under the laws of the State of New York, with its principal place of business at 39 Broadway Suite 1250, New York, NY 10006. This suit arose out of Tromberg's business in New York.

5. Tromberg regularly collects on consumer debts owed or due another via sending thousands of collection letters, file thousands of collection lawsuits, and collecting on judgments by using thousands of information subpoenas, bank restraints, and income executions, and the collection of consumer debts is the principal purpose of Tromberg's business. Tromberg is therefore a "debt collector" as defined in 15 U.S.C. § 1692a(6).

6. Defendant Stephen Einstein is a partner at Tromberg and, on information and belief, organizes, manages, and controls the operation of Tromberg. Mr. Einstein, on information and belief, is a resident of the State of New York. Mr. Einstein regularly collects on consumer debts owed or due another by signing thousands of collection lawsuits, and collecting on judgments by signing thousands of information subpoenas, bank restraints, and income executions. Upon information and belief, a majority of Tromberg's thousands of collection lawsuits and post-judgment collection devices go out under the putative signature of Mr. Einstein. Mr. Einstein is therefore a "debt collector" as defined in 15 U.S.C. § 1692a(6).

7. Defendant Collins Financial Services, Inc. ("CFS") is a foreign corporation organized under the laws of the State of Texas. This suit arises from the business and conduct of CFS in New York State.

8. CFS's principal (indeed sole) purpose is the purchase of thousands of charged-off putative consumer debts and having those debts collected upon.

9. This includes over 85,000 debts arising from the financing of the sale of goods from Dell

Computers. CFS then collects on those putative debts by, *inter alia*, retaining debt collection laws firms like Tromberg to file thousands of collection lawsuits, obtaining thousands of judgments and then retaining debt collection law firms like Tromberg to collect on those thousands of judgments using thousands of information subpoenas, bank restraints, income executions and dunning letters. CFS is a debt collector as defined in 15 U.S.C. § 1692a(6).

10. CFS engages in this purchasing and collection of consumer debts with its affiliate Collins Receivables, LLC and its parent company Collins Financial Services USA, Inc. CFS, Collins Receivables, LLC, and Collins Financial Services USA, Inc. share the same managers, executive officers, and directors, and the three companies operate as one joint debt collection enterprise. **Exhibit A** (Collins Receivables Prospectus).

11. Defendant ABC Process Serving Bureau, Inc. d/b/a ABC Process Service ("ABC Process") is a process serving agency organized under the laws of the State of New York. ABC Process regularly fails to serve summons and complaints, and regularly executes false affidavits of service allowing the entry of default judgments against putative debtors. ABC Process is therefore a debt collector within the meaning of 15 U.S.C. § 1692a(6).

12. Defendant Azzam Abderrahman ("Abderrahman") was a process server for ABC Process who executed the false affidavit of service contending that he served the collection lawsuit on Luz Texidor at an address Ms. Texidor never lived at. Mr. Abderrahman is a notorious sewer service process server whose license was suspended by the New York City Department of Consumer Affairs in 2014, a suspension which remains in effect. Mr. Abderrahman regularly failed to serve summons and complaints, and regularly executed false affidavits of service allowing debt collectors, including Tromberg, to enter default judgments against consumers such as Ms. Texidor. Mr. Abderrahman is therefore a debt collector as defined by 15 U.S.C. §

ABC000009

1692a(6).

## C. STATEMENT OF FACTS

13. Unbeknownst to Ms. Texidor at that time, her identity was fraudulently used on or around June 25, 2001 to allegedly purchase goods from Dell Computer with a putative consumer finance agreement with American Investment Bank, N.A.

14. On May 25, 2002, Ms. Texidor was arrested on a drug-related criminal offense.

15. American Investment Bank charged off the putative debt on or around January 29, 2003, and sometime between January 29, 2003 and February 19, 2008, the putative debt was allegedly sold to CFS.

16. On February 26, 2003, Ms. Texidor was convicted of a drug-related criminal offense, and on or around April 23, 2003, she was sentenced to 7 years, which would later be reduced.

17. Ms. Texidor was incarcerated from May 5, 2003 to February 2, 2007, when she was released to parole supervision, which she remained in until June 28, 2009.

18. As a standard condition of her parole, Ms. Texidor was expected to regularly report information to her parole officer, including but not limited to her residence and any time her residence changed.

19. Consequently, the Department of Corrections holds records for her residence from her arrest on May 25, 2002 until the end of her parole on June 28, 2009.

20. On or about February 19, 2008, Collins Financial Services, Inc. ("CFS"), filed a summons and verified complaint by and through Tromberg, which at the time used the name Stephen Einstein & Associates, P.C., against Ms. Texidor, titled *Collins Financial Services, Inc. v. Luz Texidor,* Index No. 20867-08/KI venued in the Civil Court of the City of New York, County of Kings (the "Collection Lawsuit"). **Exhibit B** (Summons and Complaint). The Collection Lawsuit stated it was for a "Consumer Credit Transaction." The complaint was signed

Case 1:21-cv-04845-RPK-LB Document 1 Filed 08/27/21 Page 7 of 28 PageID #: 7

and verified by Mr. Einstein.

**Filing collection lawsuit that was timebarred on its face**

21. The Collection Lawsuit alleged Ms. Texidor "entered into a Credit Agreement with Plaintiffs [sic] predecessor in interest, American Investment Bank/Dell Computer," and alleged the account was assigned to CFS. The Collection Lawsuit stated that "pursuant to the terms of the agreement" that Ms. Texidor owed $2,539.03 with interest from January 29, 2003, plus costs and disbursements.

22. The Collection Lawsuit was time-barred because it was filed more than four years from the date of the accrual of the cause of action for the sale of goods.

23. The Verified Complaint was filed on February 19, 2008. **Exhibit B**.

24. The Complaint states Ms. Texidor "defaulted" but does not state the date of default.

25. However, the default must have been more than five years from February 19, 2008, as January 23, 2003 is the date from which CFS seeking interest.

26. Uniform Commercial Code § 2-725 holds that a contract for the sale of goods is governed by a four year statute of limitations as opposed to, for example, the six year statute of limitations for a general breach of contract.

27. This four year U.C.C. statute of limitations has been adopted by nearly every state in the country, so even a basic review should have alerted Mr. Einstein and Tromberg to the possibility that their claim was time-barred.

28. Under New York's "borrowing statute," CPLR 202, when a nonresident sues in New York on a cause of action accruing outside New York, the action "cannot be commenced" unless the action is within the statute of limitations of both New York and the jurisdiction where the cause of action accrued. *Portfolio Recovery Assoc., LLC v. King*, 927 N.E.2d 1059, 1061-62 (N.Y. 2010), *citing Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 528 (1999).

**ABC000011**

29. Given Utah is the principal place of business of American Investment Bank, who was the putative original creditor, Utah law would apply, specifically the statute of limitations for "An action for breach of any contract for sale" being 4 years. UT ST § 70A-2-725.

30. Even if Tromberg had mistakenly applied New York law, the result would have been the same, as "An action for breach of any contract for sale must be commenced within four years" in New York as well. N.Y. U.C.C. § 2-725.

31. On information and belief, CFS, Tromberg, and Mr. Einstein filed suit based on the six year New York statute of limitations for contracts generally, not the four year U.C.C. statute of limitations governing the sale of the sale of goods as adopted by either Utah or New York.

32. CFS purchased a portfolio of 85,000 charged of debts which, like the one against Ms. Texidor, were allegedly for the purchase of goods from Dell Computer and was allegedly financed by American Investment Bank.

33. In 2007 and in 2008, the year it filed suit against Ms. Texidor, CFS filed thousands of collection lawsuits in New York including, on information and belief, the portfolio of 85,000 debts for the financing of the purchase of goods from Dell Computer.

34. The New York state court website eCourts lists hundreds of CFS collection lawsuits with the firm of record being Tromberg, either under the firm's current name or prior name, Stephen Einstein & Associates, P.C.

35. Therefore, on information and belief, CFS, Tromberg, and Mr. Einstein regularly filed collection lawsuits seeking to collect Dell Computer and other accounts arising from the sale of goods, and filed those collection lawsuits incorrectly assuming the six year statute of limitations for contracts generally in New York applied rather than the four year statute of limitations for sales of goods under the U.C.C. as adopted in UT ST § 70A-2-725 or N.Y. U.C.C. § 2-725.

36. By filing, serving, and continuing to litigate time-barred collection lawsuits, Defendants CFS, Tromberg, and Mr. Einstein falsely represent to consumers including Ms. Texidor, and to the Court, that their lawsuit has merit when in fact the claim is barred by the statute of limitations.

37. These Defendants misrepresent that the lawsuits are timely filed in order to deceive consumers into believing that the suits cannot be challenged on limitations grounds, that any attempt to challenge the lawsuit on limitations grounds would be futile, and that the consumer should not challenge the suit in court but instead pay the amount demanded. Moreover, the purpose of these misrepresentations is to deceive the civil court into entering judgment on time-barred claims. and awarding costs of court when the judgment creditors are not so entitled.

38. In filing, serving, and continuing to litigate the time-barred lawsuit, Tromberg and Mr. Einstein represented that it had performed a meaningful attorney review of Ms. Texidor's putative account and determined, based on professional attorney judgment, that the lawsuit was timely.

39. In fact, in the Collection Lawsuit Mr. Einstein signed, on behalf of CFS and his firm, "affirms under penalties of perjury, that he...has read this complaint and knows its contents, and that the same is alleged upon information and belief and believes it to be true" in the "ATTORNEY VERIFICATION" for the Verified Complaint. *Id.*

40. If Mr. Einstein and Tromberg had performed a meaningful attorney review of the complaint, they would have, at a minimum, determined that the debt arose from the sale of goods, what statute of limitations applied to that sale of goods, and whether the statute of limitations where the cause of action accrued was less than the New York statute of limitations for the sale of goods.

ABC000013

Case 1:21-cv-04845-RPK-LB Document 1 Filed 08/27/21 Page 10 of 28 PageID #: 10

41. And since it was apparent on the face of the Verified Complaint that, at minimum, the debt might be for the sale of goods ("a Credit Agreement with…American Investment Bank/Dell Computer"), an attorney exercising even a basic review should have understood that the U.C.C., as adopted by New York or some other state, might govern the statute of limitations, and thus be prompted to determine whether the statute of limitations was less than the six years for breach of contract in New York.

42. Either Mr. Einstein and Tromberg failed to perform a meaningful attorney review – despite their implied and express representations that he had – or he had performed the meaningful attorney review, realized the debt was time-barred, but nevertheless still filed, served, and continued to litigate the case, including opposing an order to show cause to vacate a judgment on a time-barred putative debt.

43. Ms. Texidor has never had an account with American Investment Bank, nor purchased a computer or any other item from Dell Computer.

**Judgment based on False Affidavit of Service**

44. Defendants never served the Summons and Complaint on Ms. Texidor. On or about February 29, 2008, CFS through Tromberg filed an affidavit of service in the collections lawsuit, alleging service on Ms. Texidor at the address 483 Lincoln Ave., Apt. 3F, Brooklyn, NY 11208 on February 22, 2008 by leaving the Summons and Complaint with "LAUREN, RELATIVE." **Exhibit C** (Affidavit of Service).

45. The affidavit filed purports that the 483 Lincoln address was Ms. Texidor's "last known residence" – this is false.

46. Ms. Texidor never lived at this address.

47. Ms. Texidor does not have a relative named Lauren, and does not have any relatives who

match the description provided in the Affidavit of Service.

48. The process server was Azzam Abderrahman ("Mr. Abderrahman"), DCA License No. 0820996.

49. From May 3, 1994 to the surrender of his license on January 31, 2014, Mr. Abderrahman engaged in repeated and widespread acts of process service misconduct, as catalogued in the New York City Department of Consumer Affairs Second Amended Notice of Hearing against him. **Exhibit D** (DCA Notice of Hearing).

50. The NYC DCA charged Mr. Abderrahman with 7 counts of falsely alleging service, 2 counts of failing to properly serve, 30 counts of failing to make GPS records of service of process, 30 counts of failing to keep electronic records, 10 counts of failing to include the address of the process serving agency in the affidavit of service, 15 counts of failing to keep proper logbook records, and "failing to maintain the standards of integrity, honesty and fair dealing required of licensees." *Id.*

51. Notably, in almost every one of the 7 counts for falsifying affidavits of service, Mr. Abderrahman had claimed to serve process upon a relative at the address. *Id.*

52. Mr. Abderrahman's conduct was so contumacious that, after the DCA entered a consent order against him to comply with the law on January 30, 2013, he continued to violate the law, with 55 of the aforementioned charges of misconduct occurring after this consent order was entered. **Exhibit E** (2013 Consent Order).

53. Accordingly, on January 31, 2014, DCA entered into a second consent order against Mr. Abderrahman, compelling him to surrender his process server license and banning him from reapplying for ten years. **Exhibit F** (2014 Consent Order).

54. Because Ms. Texidor was never served, she did not know she was being sued and did not

appear in the action.

55. On or about May 12, 2008, Tromberg filed an application for default in the collection lawsuit. The application was signed by Tromberg's then-name partner, Stephen Einstein. Mr. Einstein affirmed under the penalty of perjury that Ms. Texidor had been properly served and further that an additional copy of the Summons and Complaint had been mailed to "the Defendant's place of residence on 03/07/2008." **Exhibit G** (Application for Default Judgment). The application sought entry of judgment for $3,868.02. *Id.*

56. On or about May 14, 2008, Tromberg obtained a default judgment against Ms. Texidor on behalf of CFS. Judgment was entered against Ms. Texidor in the amount of $3,877.96. **Exhibit H** (Default Judgment).

57. Ms. Texidor did not learn of the Collection Lawsuit or the default judgment until years later because of the use of a false affidavit of service to obtain a "sewer service" default judgment. Ms. Texidor had also never received any letters, post-judgment garnishments or bank restraints, or otherwise learned about the judgment until the collection attempts beginning in September 2020, described below. Therefore, Ms. Texidor's claims related to the collection lawsuit, the false affidavit of service, and the default judgment obtained via sewer service are tolled.

***Ms. Texidor Learns of Identity Theft Against Her***

58. On August 9, 2016, Ms. Texidor received an income execution regarding another default judgment against her.

59. On September 29, 2016, Ms. Texidor filed an Order to Show Cause to vacate that judgment, and given the evidence that Ms. Texidor had been incarcerated at the time, the Plaintiff stipulated to discontinue the case with prejudice. **Exhibit I** (Other Default Judgment

Vacated).

60. This ordeal alerted Ms. Texidor to the fact that she had been a victim of identity theft.

61. Ms. Texidor works hard to pay her bills on time because she wants people to think she is a reliable person.

62. She also began to regularly change her PIN numbers and use cash when possible to avoid further identity theft.

63. It seemed like no matter what she did, more debts that she never incurred would pop up and her money might be taken.

64. Unfortunately, that's exactly what happened.

***Tromberg Attempts to Collect on the Sewer Service Judgment 12 Years Later***

65. On or about October 6, 2020, Tromberg signed an income execution to Bedford Center for Nursing and Rehabilitation, Ms. Texidor's employer. ***See* Exhibit J** (Income Execution).

66. The Income Execution was (purportedly) personally signed by Stephen Einstein. The income execution stated that CFS had obtained a judgment for $3,877.96 on May 14, 2008 with a "INTEREST DATE" of May 14, 2008. The Execution directed Bedford Center to satisfy the judgment by withholding and paying over to the Marshal in installments amount to 10% of wages. *Id.*

67. CFS, Tromberg, and Einstein had the income execution forwarded to Marshal Ronald Moses for execution upon Ms. Texidor's employer.

68. On or about November 12, 2020, Marshal Ronald Moses served the Income Execution on Bedford Center, listing the total amount as $8,696.16, $4,371.67 of which was interest on the fraudulently procured judgment.

69. The human resources department of Bedford Center called Ms. Texidor on or around

November 23, 2020 to inform her of the income execution.

70. By serving her employer with the income execution, CFS, Tromberg, and Einstein invaded Ms. Texidor's privacy and defamed her in the eyes of her employer. CFS, Tromberg, and Einstein represented that they had a valid judgment and that Ms. Texidor owed a legally enforceable judgment, when in fact the judgment was obtained with a time-barred lawsuit on a debt that she never incurred using a false affidavit of service.

71. While Ms. Texidor was upset that an income execution was happening to her a second time, she did at least know how to stop it, and so she went to the court that same day, November 23, 2020, and filed an Order to Show Cause to vacate the judgment. **Exhibit K** (OSC). Because she filed her OSC so quickly, she fortunately did not have any wages garnished due to the Income Execution.

72. In the OSC, Ms. Texidor stated that she was not served the summons and complaint because she "never lived at that address." *Id.*

73. Ms. Texidor also correctly stated that she was in the custody of the New York Department of Corrections from 2002 to 2009. *Id.*

74. The Civil Court Judge, finding merit to the application, signed the Order and a hearing was set for December 11, 2020.

75. This process was very frustrating because the debt was fraudulent and Ms. Texidor didn't owe money to them. Obtaining information on what the debt actually was proved to be difficult – Tromberg initially told her that the debt arose from a credit card, but later told her that the debt arose from a purchase from Dell Computer.

76. On or around November 24, 2020, Tromberg sent Ms. Texidor a letter confirming receipt of her request for validation of the debt and attaching the default judgment, but for unknown

reasons sending the letter on the letterhead with Tromberg's old name, Stephen Einstein & Associates. **Exhibit L** (Stephen Einstein Letter).

77. Then, on November 29, 2020, Tromberg sent another collection letter to Ms. Texidor. **Exhibit M** (Collection Letter).

78. On or around November 30, 2020, Ms. Texidor handwrote a letter to Tromberg stating that the debt was not hers and that she never lived at the address on the default judgment.

***Tromberg doubles down on the time-barred lawsuit and the sewer service by opposing Ms. Texidor's OSC with a deceptive Opposition***

79. On December 1, 2020, Tromberg executed an Affirmation in Opposition to the Order to Show Cause and mailed the same to Ms. Texidor. **Exhibit N** (Affirmation in Opposition). Along with the Affirmation, Tromberg included an undated cover letter seeking payment on the judgment by asking Ms. Texidor to call to "resolve this matter amicably." **Exhibit O** (Cover to Opposition).

80. By signing and serving the Affirmation, Tromberg implicitly represented to Ms. Texidor that that it had meaningfully reviewed the facts and circumstances of the judgment and made a reasoned professional determination that the judgment was valid and correspondingly that the Affidavit of Service was truthful.

81. Tromberg either failed to perform the necessary meaningful review that would have revealed that the underlying debt was time-barred and the Affidavit of Service was made by suspended process server Azzam Abderrahman, or it did perform such a review and made the statements in the Opposition aware of their falsity. If nothing else, in relying upon the false affidavit of the notorious sewer service process server Mr. Abderrahman in the Affirmation in Opposition to the Order to Show Cause, CFS and Tromberg ratified the sewer service, and attempted to retain the benefits obtained through that false affidavit: the default judgment.

**ABC000019**

82. The Opposition falsely states that the action is "to recover the unpaid credit card that the defendant incurred with the plaintiff's predecessor." **Exhibit N**, p. 1. Had Tromberg truthfully disclosed the nature of the putative debt as it was alleged in the complaint – that Ms. Texidor "entered into a Credit Agreement with... American Investment Bank/Dell Computer" (*see* **Exhibit B**) – it would have disclosed that the debt was governed by the four year statute of limitations. And since the judgment Tromberg attached to the Opposition disclosed that the claim accrued more than five years from the filing of the collection lawsuit (as shown by the judgment Tromberg attached to its Opposition), disclosure of the true nature of the debt as a sale of goods would have shown the lawsuit was time-barred.

83. By misrepresenting the nature of the debt in the Opposition, Tromberg concealed a complete defense to the underlying debt while asserting that Ms. Texidor had no meritorious defense to the debt.

84. In addition, Tromberg coyly fails to attach the Affidavit of Service to its Opposition. A meaningful attorney review in drafting an Opposition to an OSC claiming lack of service and alleging facts about why service could not have been proper would be to review the Affidavit of Service that was in the firm's possession. Tromberg obviously had the Affidavit of Service as it was the firm that obtained the default judgment. On information and belief, Tromberg did not attach the Affidavit of Service to prevent Ms. Texidor from being able to refute specific allegations in the Affidavit as to the time, place and manner of service while at the same time asserting that Ms. Texidor could not refute service.

85. Further, by withholding the Affidavit of Service Tromberg concealed the identity of the process server. As previously noted, the process server Mr. Abderrahman was a notorious process server whose license was suspended since 2014 after the NYC Department of Consumer

Affairs documented Mr. Abderrahman repeatedly executing false affidavits of service. By concealing the identity of the process server Tromberg sought to conceal from Ms. Texidor, who was *pro se* at the time, a fact that she could use to expose the falsity of the Affidavit of Service.

86. The Opposition also misrepresents facts asserted by Ms. Texidor in her *pro se* OSC.

87. The Opposition states that "the Defendant was not incarcerated at the time the contract was entered, which was on or about 6/25/2001." This statement is misleading because (1) it implies that Ms. Texidor asserted that she was incarcerated when the contract was entered into, which she did not, and (2) it implies that Ms. Texidor's residence was relevant to the question of whether she incurred the debt, which it is not.

88. The Opposition states that "defendant does not deny the approximate, outstanding balance owed to the plaintiff." *Id.* This is patently false – the proposed Answer included with the OSC states, in pertinent part "I do not owe this debt," "It is not my debt. I am the victim of identity theft or mistaken identity," and "I dispute the amount of the debt." **Exhibit K**.

89. Ms. Texidor's OSC incorporated this proposed Answer by reference in its request to allow her to file an answer. *Id.*

90. Not only had Tromberg received this OSC, but they even attached it to the Opposition (**Exhibit N**, pp. 8-12).

91. Tromberg also states in the Opposition "The defendant is required to produce documentary evidence to support her allegation that she was incarcerated during the lifetime of the card and during service of process." *Id.* This statement is misleading – Ms. Texidor's OSC does not allege in her OSC that she was incarcerated during the lifetime of the card and during service of process. It simply alleges that she was in Department of Corrections custody from

ABC000021

2002 to 2009.

92. Without the court file, which was in archives at the time that Ms. Texidor filed her OSC, she had no way to dispute the Affidavit of Service because she simply had not seen it. The default judgment attached to Tromberg's Opposition does not provide that information either, despite the fact that CFS was the original judgment creditor and Tromberg was the firm that obtained the default judgment using the Affidavit of Service.

93. Defendants opposed the OSC, counting on the fact that Ms. Texidor was a *pro se* consumer and that during the COVID-19 pandemic it was difficult for her to obtain free legal help, to retain the benefits of their illegally obtained judgment, including but not limited to the Income Execution that they would undoubtedly have resumed if Ms. Texidor's OSC was denied.

94. On information and belief, Tromberg took no steps to obtain additional evidence to oppose the order to show cause. This was because Tromberg knew they had no such evidence, or that the evidence would show the fraudulent nature of the putative debt and the Affidavit of Service used to obtain the default judgment.

95. At the December 11, 2021 hearing, conducted by video conference due to public health precautions during the COVID-19 pandemic, the presiding judge asked Tromberg if they had proof that the debt was hers. Tromberg said that they did, and so Ms. Texidor was told she had to go and get all the information she could to prove that the debt was not hers.

96. Finding merit to Ms. Texidor's sworn denial of receiving the summons and complaint, the Court ordered a traverse hearing to be held on January 20, 2021.

97. Ms. Texidor began to assemble proof that she was the victim of identity theft and the Affidavit of Service was false. On December 29, 2020, she filled out a Federal Trade

**ABC000022**

Commission Identity Theft Report. **Exhibit P** (ID Theft Affidavit).

98. On January 8, 2021, Ms. Texidor was able to get some help from Legal Services NYC, which filed a letter as a friend of the court requesting that the traverse hearing be adjourned since the courthouse clerks estimated that the court file, including the affidavit of service, would not be located until at least March 6, 2021. **Exhibit Q** (LSNYC Letter).

99. At the January 20, 2021 hearing, Defendants stated that they would agree to stipulate to discontinue the case despite their earlier opposition to the OSC.

100.

***Defendants' misconduct exposed Ms. Texidor to embarrassment at her job, deprived her of sleep, made her feel anxious and afraid of losing her job, and caused economic damages.***

101. Ms. Texidor was told about the Income Execution against her, she had to tell her boss that she had to leave to go to court and get the judgment vacated. Having to do this made her feel embarrassed and ashamed.

102. After filing the OSC, she was bombarded by questions at work about what had happened and whether she gotten it fixed.

103. She would ask her boss for time off of work to make court appearances and gather evidence, and her boss would ask how many more times she would take off to handle it.

104. Ms. Texidor wound up getting written up three times at her work for "calling out excessively," making her afraid that she might lose her job.

105. Ms. Texidor suffered economic damages of having to use vacation days and personal days to travel (during COVID), *inter alia*, to court for her Order to Show Cause, to her prior parole officer to establish dates of and proof of address during the date of alleged service to go to a notary, and to mail papers related to her attempts to vacate the default judgment. She incurred

WHAT $ DAMAGES DID SHE SUFFER? HARDLY ANY

travel expenses, including subway fare and, when she drove, costs for parking. She paid costs, *inter alia*, for a notary and for copying and postage costs for mailing documents related to the order to show cause to vacate the default judgment. She had lost time for the many hours over months she spent attempting to vacate the sewer service judgment for the time-barred debt that she did not incur.

106. After getting the Income Execution, Ms. Texidor determined that she needed help to fix her credit and deal with the identity theft. Unfortunately, like thousands of consumers, she was deceived by a "credit repair" company that did not do anything for her other than remove three inquiries from one of her credit reports, and charged her $19 for that.

107. But-for Defendants' obtaining a default judgment with sewer service and then attempting to collect on the fraudulently obtained judgment, Ms. Texidor would not have suffered any of the above economic injuries.

108. Ms. Texidor's job is her sole source of income, and she lives paycheck to paycheck, in part due to the high rents and cost of living in New York City.

109. Even today when she goes to her office, she feels like they look down on her, believing that she does not pay her credit cards, which makes her feel embarrassed and ashamed.

110. She felt very discouraged and upset being accused of incurring a debt that she was not actually responsible for.

111. She wondered whether every other year she'd keep getting Income Executions trying to garnish her money for debts that were not hers.

112. She could not sleep during this time – she would take medication to get to sleep but still wake up in the middle of the night, usually to anxiously check her bank account to make sure that no one was taking money out of her account.

113. She needed the medication to get to sleep because her mind would be racing.

114. The sewer service judgment made her feel overwhelmed, and she felt tired all the time from the lack of sleep.

115. In order to obtain proof that the Affidavit of Service was false, she had to speak to her former parole officers. While they were understanding, they explained that what happened to her was something they had seen before, and that made her more afraid that this would keep happening to her.

116. She was upset that if the Defendants had listened to her – when she filed her OSC or at the December 11 hearing – it would have ended in the same result, but instead she had to go out and gather all the evidence she could find.

117. She has never even owned a laptop, only accessing the internet through her phone or using the fax or scanner at her work.

## D. COUNT 1: FAIR DEBT COLLECTION PRACTICES ACT (as to all Defendants)

118. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

119. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); see also *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

ABC000025

120. Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general." *See* S. Rep. No. 382, 95th Con., 1st Sess. 5, ("[t]he committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 91 (2d Cir. 2008) ("[i]n this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

121. The obligation alleged to be owed by plaintiff is a "debt" as defined by 15 U.S.C. § 1692a(5) because the putative debt was incurred primarily for family, personal or household purposes, specifically financing for the sale of goods from Dell Computer. Notably, in the Verified Complaint, Defendants CFS, Tromberg, and Mr. Einstein stated the putative debt arose from a "consumer credit transaction."

CHALLENGE FALSE STATEMENT BASED ON ORIGINAL FALSE STATEMENT

122. For the reasons stated in the "Parties" section of this Complaint, each Defendant is a debt collector within the meaning of 15 U.S.C. § 1692a(6).

123. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Plaintiff was alleged to owe a "debt."

124. Defendants violated the following sections of the FDCPA: 15 U.S.C. §§ 1692e and 1692f. By way of example and not limitation, Defendants CFS, Tromberg, and Mr. Einstein violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; the representation that nonpayment will result in the seizure, garnishment, attachment, or sale of any property or

wages of any person unless such action is lawful; falsely representing or implying an individual is an attorney or that a communication is from an attorney; threatening to take and actually taking an action prohibited by law; and using unfair or unconscionable means.

125. Defendants ABC Process Service, and Azzam Abderrahman violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: using false, deceptive or misleading representations or means; taking an action prohibited by law; and using unfair or unconscionable means.

126. The injuries inflicted on Plaintiff by Defendants are concrete and particular, and these injuries have a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.

127. Ms. Texidor suffered economic injuries that historically has provided a basis for lawsuits in American courts, including but not limited to out of pocket expenses for making copies, for postage, for a notary, for "credit repair" services, and for travel including subway fare, use of a vehicle, and paying for parking; lost time for having to go to the courthouse twice, appear on her OSC to vacate a sewer service judgment and to gather evidence for the traverse hearing necessitated by the deceptive Opposition to the OSC; lost wages in that she had to use her vacation days and sick days to spend time fighting the sewer service judgment.

SAME AS WHAT HE IS TRYING TO DO TO ABC

128. Ms. Texidor's injuries are analogous to, *inter alia*, the following common law claims: defamation, negligence, invasion of privacy, intrusion upon seclusion, malicious civil prosecution, and abuse of process.

129. Defendants had a duty to exercise reasonable care in the collection of debts, including in the selection of companies to attempt to collect the debt, in ensuring that a debt is not linked to the wrong party, and in furnishing agents with accurate information when those agents rely on

and use that information in attempting to collect debts.

## E. COUNT 2: NEW YORK GENERAL BUSINESS LAW SECTION 349 *ET SEQ.*
**(as to all Defendants )**

130. Plaintiff repeats and re-alleges each and every allegation set forth above as if reasserted and re-alleged herein.

131. New York General Business Law Section 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state…"

132. An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action." N.Y. Gen. Bus. Law § 349(h). An individual may also be awarded punitive damages.

133. As enumerated in the Statement of Facts, Defendants violated N.Y. Gen. Bus. Law § 349 et seq. by using deceptive acts and practices in the conduct of their businesses that have broad impact on consumers at large.

134. Defendants' wrongful and deceptive acts caused injury and damages to Plaintiff.

135. As a direct and proximate result of those violations of N.Y. Gen. Bus. Law § 349 et seq, Plaintiff suffered compensable harm and is entitled to preliminary and permanent injunctive relief, and to recover actual, treble, exemplary, and punitive damages, together with costs and attorney's fees.

136. The injuries inflicted on Plaintiff by Defendants are concrete and particular, and these injuries have a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.

137. Ms. Texidor suffered economic injuries that historically has provided a basis for lawsuits


ABC000028

in American courts, including but not limited to out of pocket expenses for making copies, for postage, for a notary, for "credit repair" services, and for travel including subway fare, use of a vehicle, and paying for parking; lost time; lost wages in that she had to use her vacation days and sick days to spend time fighting the sewer service judgment.

138. Ms. Texidor's injuries are analogous to the following common law claims: defamation, negligence, invasion of privacy, intrusion upon seclusion, malicious civil prosecution, and abuse of process.

139. Defendants had a duty to exercise reasonable care in the collection of debts, including in the selection of companies to attempt to collect the debt, in ensuring that a debt is not linked to the wrong party, and in furnishing agents with accurate information when those agents rely on and use that information in attempting to collect debts.

## F. COUNT 3: NY JUDICIARY LAW § 487 (as to Tromberg and Mr. Einstein)

140. New York Judiciary Law § 487 creates a private right of action against an attorney or counselor who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party;" or "willfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for."

141. As enumerated in the Statement of Facts, Tromberg and Mr. Einstein violated Judiciary Law § 487.

142. Plaintiff is entitled to actual damages, treble damages, and attorneys' fees and costs for the violations of N.Y. Judiciary Law § 487, and Plaintiff so seeks.

143. The injuries inflicted on Plaintiff by Tromberg and Mr. Einstein are concrete and particular, and these injuries have a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.

144. N.Y. Judiciary Law § 487 is "the modern-day counterpart of a statute dating from the first decades after Magna Carta; its language virtually (and remarkably) unchanged from that of a law adopted by New York's Legislature two years before the United States Constitution was ratified." *Amalfitano v. Rosenberg,* 12 N.Y.3d 8, 14 (N.Y. 2009).

145. Because of the special injuries inflicted by an attorney using deceit to mislead the court or any party, an injury to the integrity of the court proceedings and the use of the courts to determine the truth, a deceit does not need to be successful to violate N.Y. Judiciary Law § 487. *Id.*

146. In addition to those special injuries, economic injuries that are the proximate result of the deceit, namely the expenses of defending against a deceitful lawsuit, are recoverable under N.Y. Judiciary Law § 487. *Id*

147. Ms. Texidor suffered economic injuries that historically has provided a basis for lawsuits in American courts, including but not limited to out of pocket expenses for making copies, for postage, for a notary, for "credit repair" services, and for travel including subway fare, use of a vehicle, and paying for parking; lost time for having to go to the courthouse twice, appear on her OSC to vacate a sewer service judgment and to gather evidence for the traverse hearing necessitated by the deceptive Opposition to the OSC; lost wages in that she had to use her vacation days and sick days to spend time fighting the sewer service judgment.

## G. COUNT #4: GROSS NEGLIGENCE (AS TO ALL DEFENDANTS)

148. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

149. Defendants, as putative creditor assignee and debt collectors, owed Ms. Texidor a duty of reasonable care in their debt collection efforts.

ABC000030

150. Defendants' failure to exercise even slight care or slight diligence amounts to gross negligence.

151. Had Defendants made even the smallest effort to review the statute of limitations before filing the time-barred lawsuit, no lawsuit would have been filed against Ms. Texidor.

152. Had Defendants made even the smallest effort to review the Verified Complaint and Affidavit of Service when they received Ms. Texidor's OSC, they would have seen that the lawsuit had been time-barred and that the judgment was procured using an affidavit by a notoriously deceitful process server, Azzam Abderrahman, and consented to vacating the judgment and discontinuing the lawsuit with prejudice.

153. Defendants' actions evince a reckless disregard for the rights of others and smack of intentional wrongdoing, particularly the due process rights for consumers underlining the purpose of the statute of limitations on a sale of goods cause of action.

154. Upon information and belief, Defendants' conduct was part of a broader pattern of misconduct aimed at the public in general.

155. Defendants' conduct demonstrates a high degree of moral culpability and willful or wanton negligence or recklessness. As a result, Ms. Texidor is entitled to a punitive damage award.

156. Ms. Texidor suffered economic injuries due to Defendants' gross negligence that historically has provided a basis for lawsuits in American courts, including but not limited to out of pocket expenses for making copies, for postage, for a notary, for "credit repair" services, and for travel including subway fare, use of a vehicle, and paying for parking; lost time; lost wages in that she had to use her vacation days and sick days to spend time fighting the sewer service judgment.

ABC000031

Case 1:21-cv-04845-RPK-LB Document 1 Filed 08/27/21 Page 28 of 28 PageID #: 28

## H. JURY DEMAND.

157. Plaintiff demands a trial by jury.

## I. PRAYER

WHEREFORE, Plaintiff requests the following relief:

a. A declaration that all Defendants have committed the violations of law alleged in this action;

b. Statutory damages under 15 U.S.C. § 1692k and GBL 349;

c. Reasonable attorney's fees and costs;

d. Actual damages;

e. Treble damages;

f. Exemplary and punitive damages;

g. An order, pursuant to GBL 349(h), enjoining and directing Defendants to cease violating that statute;

h. Prejudgment and post judgment interest as allowed by law;

i. All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

Dated: Brooklyn, New York
August 27, 2021

Respectfully submitted,

/s/

Ahmad Keshavarz
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax: (877) 496-7809
Email: ahmad@NewYorkConsumerAttorney.com

ABC000032

# Surety Bond
# Process Serving Agency

(NYC Administrative Code Section 20-406.1)

Effective Date: February 28th, 2012 Bond Number: [redacted]8530

Anniversary Date: February 28th, 2014

The premium of this bond is $ 1,500.00 for the term of 2 year(s).

KNOW ALL PERSONS BY THESE PRESENTS:

That ABC Process Serving Bureau, Inc. ,
(Name of Principal)

doing business as ,
(Name of Business)

a Process Serving Agency, whose address is 225 Broadway Suite 225
(Street Address)

New York, NY 10007 , as PRINCIPAL, and
(City, State, ZIP Code)

WESTERN SURETY COMPANY ,
(Name of Surety)

a corporation authorized to transact a general surety business in the State of New York, as SURETY, are held and firmly bound to the People of the City of New York, as Obligee, for the use and benefit of the City of New York or any aggrieved person who may be injured by the Principal as hereinafter provided in the sum of one hundred thousand dollars ($100,000), for which payment we bind ourselves and our legal representatives, jointly and severally, firmly by these presents.

THE CONDITION of the above obligation is such that WHEREAS the Principal(s) is a Process Serving Agency pursuant to Sections 20-403 *et. seq*. of the NYC Administrative Code, and is required to give security pursuant to Section 20-406.1 of the NYC Administrative Code in the principal amount of one hundred thousand dollars ($100,000).

NOW, THEREFORE, the conditions of the foregoing obligations are that if the Principal(s) complies with NYC Administrative Code Sections 20-403 *et seq*. and Rules of the City of New York Sections 2-231 *et seq*., as are now in force or which may hereafter be amended relating to the business of Process Serving Agency, and that the Principal(s) will pay to the City any fine, penalty or other obligation the City imposes relating to a violation of NYC Administrative Code Sections 20-403 *et seq*. and Rules of the City of New York Sections 2-231 *et seq*. and will pay to a plaintiff any final judgment recovered in an action arising out of the violation of any of the provisions of NYC Administrative Code Sections 20-403 *et seq*. and Rules of the City of New York Sections 2-231 *et seq* within thirty (30) days of its imposition, and shall indemnify and save harmless the Obligee or any aggrieved person from all loss and damage that they shall suffer by reason of said Principal's failure to comply with said laws and regulations, then this obligation is to be void; otherwise, it is to remain in full force and effect.

PROVIDED, HOWEVER, this bond is issued subject to the following express conditions:

1. This bond shall be deemed continuous in form and shall remain in full force and effect for the term of the initial bond and all subsequent terms, for all liabilities, acts, omissions or causes arising after this bond becomes effective until terminated as hereinafter provided.
2. This bond may be canceled by the Surety by giving sixty (60) days notice in writing to the City of New York Department of Consumer Affairs and Principal(s) at the address last known to the Surety by certified mail at least sixty (60) days prior to the termination date specified in such notice and upon giving such notice, the Surety shall be discharged from all liability under this bond for any act or omission of the Principal occurring after such termination date.
3. The people of the City of New York, as Obligee, or any person aggrieved by the Principal's breach of conditions of this bond may proceed against the Principal or Surety herein, or both, to recover damages. Successive actions may be brought against this bond for successive breaches of its conditions.
4. Regardless of the number of years the bond remains in effect, the number of premiums paid, the number of renewals of the license, the number of claimants or the number of claims made, the aggregate liability under the bond shall not exceed the penal sum of the bond.

Executed in Sioux Falls, South Dakota on this 18th day of
(City, State)

January , 2012 .
(Month) (Year)

ABC Process Serving Bureau, Inc. , Principal

By ______________________________

______________________________ ,

WESTERN SURETY COMPANY , Surety

By Paul T. Bruflat , Attorney-in-Fact
Paul T. Bruflat, Senior Vice President

P.O. Box 5077, Sioux Falls, SD 57117-5077
(Address of Surety)

WESTERN SURETY COMPANY CORPORATE SEAL SOUTH DAKOTA

# Western Surety Company

## POWER OF ATTORNEY

**KNOW ALL MEN BY THESE PRESENTS:**

That WESTERN SURETY COMPANY, a corporation organized and existing under the laws of the State of South Dakota, and authorized and licensed to do business in the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming, and the United States of America, does hereby make, constitute and appoint

Larry Kasten of Sioux Falls, State of South Dakota, its regularly elected Vice President, as Attorney-in-Fact, with full power and authority hereby conferred upon him to sign, execute, acknowledge and deliver for and on its behalf as Surety and as its act and deed, the following bond:

One PROCESS SERVING AGENCY CITY OF NEW YORK

bond with bond number [redacted]8530

for ABC PROCESS SERVING BUREAU, INC.

as Principal in the penalty amount not to exceed: $100,000.00.

Western Surety Company further certifies that the following is a true and exact copy of Section 7 of the by-laws of Western Surety Company duly adopted and now in force, to-wit:

Section 7. All bonds, policies, undertakings, Powers of Attorney, or other obligations of the corporation shall be executed in the corporate name of the Company by the President, Secretary, any Assistant Secretary, Treasurer, or any Vice President, or by such other officers as the Board of Directors may authorize. The President, any Vice President, Secretary, any Assistant Secretary, or the Treasurer may appoint Attorneys-in-Fact or agents who shall have authority to issue bonds, policies, or undertakings in the name of the Company. The corporate seal is not necessary for the validity of any bonds, policies, undertakings, Powers of Attorney or other obligations of the corporation. The signature of any such officer and the corporate seal may be printed by facsimile.

This Power of Attorney may be signed by digital signature and sealed by a digital or otherwise electronic-formatted corporate seal under and by the authority of the following Resolution adopted by the Board of Directors of the Company by unanimous written consent dated the 27th day of April, 2022:

"RESOLVED: That it is in the best interest of the Company to periodically ratify and confirm any corporate documents signed by digital signatures and to ratify and confirm the use of a digital or otherwise electronic-formatted corporate seal, each to be considered the act and deed of the Company."

In Witness Whereof, the said WESTERN SURETY COMPANY has caused these presents to be executed by its Vice President with the corporate seal affixed this 6th day of March, 2024.

ATTEST

WESTERN SURETY COMPANY

[signature] L. Bauder, Assistant Secretary

By [signature] Larry Kasten, Vice President

WESTERN SURETY COMPANY CORPORATE SEAL SOUTH DAKOTA

STATE OF SOUTH DAKOTA } ss
COUNTY OF MINNEHAHA

On this 6th day of March, 2024, before me, a Notary Public, personally appeared Larry Kasten and L. Bauder who, being by me duly sworn, acknowledged that they signed the above Power of Attorney as Vice President and Assistant Secretary, respectively, of the said WESTERN SURETY COMPANY, and acknowledged said instrument to be the voluntary act and deed of said Corporation.

S. GREEN
NOTARY PUBLIC SEAL
SOUTH DAKOTA

[signature] Notary Public

My Commission Expires February 12, 2027

**To validate bond authenticity, go to www.cnasurety.com > Owner/Obligee Services > Validate Bond Coverage.**

Form F9701

ABC000035

WESTERN SURETY COMPANY • ONE OF AMERICA'S OLDEST BONDING COMPANIES

# Western Surety Company

## CONTINUATION CERTIFICATE

Western Surety Company hereby continues in force Bond No. [redacted]8530 briefly described as PROCESS SERVING AGENCY CITY OF NEW YORK,

for ABC PROCESS SERVING BUREAU, INC., as Principal,

in the sum of $ ONE HUNDRED THOUSAND AND NO/100 Dollars, for the term beginning February 28, 2024, and ending February 28, 2026, subject to all the covenants and conditions of the original bond referred to above.

This continuation is issued upon the express condition that the liability of Western Surety Company under said Bond and this and all continuations thereof shall not be cumulative and shall in no event exceed the total sum above written.

Dated this 6th day of March, 2024.




WESTERN SURETY COMPANY

By ______________________
Larry Kasten, Vice President

**THIS "Continuation Certificate" MUST BE FILED WITH THE ABOVE BOND.**

Form 90-A-6-2023

WESTERN SURETY COMPANY • ONE OF AMERICA'S OLDEST BONDING COMPANIES

CITY OF NEW YORK OATH

# OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS

Hearings Division

## DECISION

| | |
|---|---|
| Corie Stark, Esq. /Corie Stark PLLC<br>110 East 59th Street<br>22nd floor<br>NY,NY 10022 | **Summons No: 240031HR**<br><br>**DEPARTMENT OF CONSUMER AND WORKER PROTECTION,**<br>**-against-**<br>**Mohaned Elgizawy**<br><br>**Hearing Date: 05/02/2024**<br>**Hearing Location: Remote**<br>**Type of Hearing: By Telephone** |

| | |
|---|---|
| Total Penalty Amount: **$0.00** | Restitution:**$0.00** |
| Suspension/Revocation/Sealing: | |

| SUMMONS # | SUMMARY DISPOSITION | DATE OF OCCURRENCE | PLACE OF OCCURRENCE |
|---|---|---|---|
| 240031HR | Dismissed | 02/11/2024 | Various All within NYC Manhattan |

| LINE ITEM | OATH CODE | CODE SECTION/RULE | OCCUR-RENCE | NO. OF COUNTS | RESULT | PENALTY | SUSPENSION/ REVOCATION/SEALING |
|---|---|---|---|---|---|---|---|
| 1 | NA | 6 RCNY § 2-234 | 1 | 2 | Dismissed | $0.00 | |

## Findings of Fact & Conclusions of Law

Peititioner DCWA issued a summons against Respondent Mohaned Elgizawi , a licensed process server, alleging he made out a false affidavit of service when he claimed to have served a summons and complaint in a Supreme Court action – Design Inc. v. One Horse & Two Snakes Inc. et al., Index No. 519855/2021 (Sup. Ct., Kings Co.) - on defendant One Horse & Two Snakes Inc. by delivery on August 18, 2021, at 1:28pm to one "Refused Name," "managing agent," at 802 Dekalb Ave., Apt. "D2," Brooklyn, NY 11221. Alternatively, Petitioner alleges that service of process was improper in "that delivery of service was not made upon an individual with requisite position or authority to accept service", in violation of 6 RCNY section 2-234 which states:

"The licensee shall at all times strictly and promptly conform to all laws, rules, regulations and requirements of the federal, state and municipal authorities relating to the conduct of licensees and the service of process in the State of New York and the preparation, notarization and filing of affidavits of service and other documents now in force or hereafter adopted during any license period."

On 5/2/24, the hearing was conducted by telephone. Respondent appeared with his attorney Corey Stark, Esq. Petitioner DCWA appeared by its Assistant General Counsel Mitchell Nisonoff, Esq.

In support of Peititioner's charge, Mr. Nisonoff submitted his affirmation dated February 21, 2024, a photograph of Respondent's process server license, Respondent's affidavit of service, a copy of the affidavit of Roland Williams submitted in the Supreme Court action in support of his challenge to service in that action, an order of Supreme Court Justice Hon. Karen B. Rothenberg referring the matter to a referee for a traverse hearing and the referee's order following the traverse hearing upholding the challenge to service of process. The order states:

"The witnesses called at the hearing were the process server, Mohaned Elgizawy, Roland Williams, who owns the One Horse & Two Snakes business, and Shaneke Williams, Mr. Williams' wife. At the conclusion of the hearing, this Court made its findings on the record. It held that the plaintiff failed to prove the service described in the affidavit of service was valid. Specifically, it found that the only person who could have been served at Apartment 2D on the date in questions was Roland Williams, and the defense had demonstrated convincingly that Williams was at work at 68 Jay Street, Brooklyn a the time of the alleged service on August 18, 2021".

Mr. Nisonoff argued that even if Respondent did in fact deliver a copy of the summons and complaint to an individual in apartment D2, the service was improper because Respondent did not inquire in what capacity that individual was authorized to accept service on behalf of the named corporation, in violation of CPLR Section 306(a), which states, inter alim "an affidavit of service "shall ... set forth facts showing that service was made ... in an authorized manner".

Mr.Corey denied the charges. Respondent testified as follows: He is a licensed process server working as an independent contractor. On August 6, 2021, he was assigned, through ABC Process Service, the task of serving a summons and verified complaint upon One Horse & Two Sankes Inc. at 802 Deklab Avenue, Apt D2, Brooklyn, NY 11211 (Resp. Ex. 1). On 8/18/21, at approximately 1:28PM, he went to 802 Dekalb Avenue in Brooklyn, a multiple dwelling with a call box. He rang apartment D2 and was buzzed in immediately. He entered the building and took the stairs up to the second floor. He knocked on the door of apartment D2. An individual whom he described in his affidavit of service as a "male, 36-50 old, with tan skin and black hair, 5ft 9in-to 6ft, and 161-200lbs" opened the door. He told him that he had papers to serve upon One Horse & Two Snakes, and asked the individual if he was authorized to accept service on behalf of the corporation. The individual told him that he was authorized to accept service on behalf of the corporation. He asked the individual for his name but the individual refused to give him his name. He then served the papers upon that individual and exited the building. He took a photograph of the building and submitted a GPS record with coordinates which show that he was at 802 Dekalb Avenue at 1:28PM on 8/18/21 (Resp. Ex. 2). Respondent said that he maintains a log book of all his attempts at service and submitted a copy of the log book page with the relevant entry relating to this particular service (Resp. Ex. 4). ABC Process Server then filled out the affidavit of service based on his method of service which he signed (Resp. Ex. 3). He said he wrote that he served a "managing agent" because any person authorized to accept service on behalf of a corporate defendant is an "agent" of that corporation.

The issue before me is whether Respondent did in fact effectuate service as reflected in his affidavit of service, and if so, whether service of process was proper under CPLR section 306.

As a preliminary matter, I note that I am not bound by the findings of the referee following the traverse hearing in the Supreme Court action.

I credit Respondent's testimony and the documentary evidence submitted and find that Respondent effectuated service upon One Horse & Two Snakes as reflected in his affidavit of service. With respect to Petitioner's claim that Respondent's affidavit of service is invalid because he did not inquire in what capacity that individual was authorized to accept service on behalf of the corporate defendant, I find that Respondent was not required to further inquire once that individual told him that he was authorized to accept service on behalf of the corporate respondent. See DCWP v. Norbert Maldonado, Appeal No. 220003HR (June 24, 2022). In addition, Respondent is allowed to reasonably rely on the representation of apparent authority to accept service on behalf of a corporate respondent. See DOB v. Chatsworth Builders LLC, Appeal No. 2400205 (March 28, 2014). See also DOB v. Ninth Avenue Realty LLC, Appeal No. 2100573 (July 22, 2021). Accordingly, I find that service of process was proper in all respects and dismiss the summons.

| | |
|---|---|
| May 03, 2024 | 05/03/2024 |
| Didi Skaff, Hearing Officer | Date |

# IF YOU ARE FOUND IN VIOLATION, YOU MUST PAY THE PENALTY WITHIN 30 DAYS OF THE DECISION DATE OR 35 DAYS IF MAILED.

- **To pay by mail**, send a check or money order, along with a copy of your decision, to the NYC Department of Consumer and Worker Protection, Collections Division, 42 Broadway, 8th Floor, New York, NY 10004. The check or money order should be made out to "NYC Department of Consumer and Worker Protection." Write the summons number on the check or money order.

- **To pay in person**, you must schedule an appointment. To schedule an appointment email Collections@dcwp.nyc.gov or call (212) 436-0259 (Monday - Friday, 9:00 a.m. 4:00 p.m.)

- **To pay online** using a credit or debit card, go to nyc.gov/dcwp and click "Pay Fines" under Quick Links for the directions for paying online. You may pay by either debit, credit card, or electronic check. Convenience fees apply..

## IF YOU DISAGREE WITH THE DECISION, YOU MAY APPEAL IT

You MUST use OATH's online or mail-in appeal forms available on OATH's website to submit your appeal. Instructions for filing an appeal may be found on the form and OATH's website at nyc.gov/oath/appeals.

Your appeal MUST be received by the OATH Hearings Division **within 30 days** of the decision date, or 35 days if the decision was mailed to you.

To appeal you MUST pay the full penalty stated in this decision.

- If you cannot pay because of financial hardship, you may ask to not pre-pay by submitting with your appeal a Financial Hardship Application, also available on OATH's website.

## APPEAL BY ENFORCEMENT AGENCY

If you wish to answer an appeal filed by an enforcement agency, you MUST use OATH's Response To Appeal form. Instructions for filing an answer may be found on the form and OATH's website at nyc.gov/oath/appeals.

Your answer must be received **within 30 days** of the date of the enforcement agency's appeal, or within 35 days if it was mailed to you.

If the enforcement agency wins the appeal, you may have to pay a penalty even if your case was originally dismissed after the hearing.

**For more information,**
**see OATH's website nyc.gov/oath**
**or call 1-844-OATH-NYC**

GN3b Decision Back DCA 5-9-1

CITY OF NEW YORK OATH
**OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS**
*Appeals Division*
9 Bond Street, 6th Floor
Brooklyn, NY 11201
Tel: (212) 436-0624

**Appeal No. 240031HR** **DCWP v. Mohaned Elgizawy** **August 26, 2024**

## APPEAL DECISION

The appeal of Petitioner, the Department of Consumer and Worker Protection (DCWP), is **denied**.

Petitioner appeals from a decision by Judicial Hearing Officer (JHO) D. Skaff, dated May 3, 2024, dismissing against Respondent, licensed process server, two charges of § 2-234 of Title 6 of the Rules of the City of New York (RCNY) for failure to comply with applicable laws relating to the conduct of licensees and service of process. Having fully reviewed the record, the Tribunal finds that the JHO's decision is supported by the law and a preponderance of the evidence. Therefore, the Tribunal finds as follows:

| Summons | Law Charged | Hearing Determination | Appeal Determination | Penalty |
|---|---|---|---|---|
| 240031HR | 6 RCNY § 2-234 | Dismissed (x 2) | Affirmed – Dismissed | $0 |

## BACKGROUND

In the summons, with a first date of occurrence of December 1, 2022, Petitioner's attorney affirmed as follows. According to his affidavit of service, Respondent served a summons and verified complaint and related papers in the case of *Gabriel's Design Inc. v. One Horse & Two Snakes Inc.* (One Horse & Two Snakes) *et al.*, Index No. 519855/2021 (Sup. Ct., Kings Co.), at 1:28 p.m. on August 18, 2021, by delivery to an individual, purported to be One Horse & Two Snakes's managing agent, who refused to give a name, at 802 DeKalb Avenue, Apt. D2, Brooklyn, NY. Service was challenged in court, which referred the matter to a Special Referee for a traverse hearing. In his order, the Special Referee concluded that "the plaintiff failed to prove the service described in the affidavit of service was valid," specifically finding that "the only person who could have been served at Apartment [D2] on the date in question was Roland Williams, and the defense had demonstrated convincingly that Williams was at work at 68 Jay Street, Brooklyn at the time of the alleged service on August 18, 2021." The action was subsequently dismissed for improper service. As found by the Special Referee, Respondent did not serve anyone and his affidavit of service was false, or, alternatively, if service was made upon an individual, it was improper because the individual did not have the requisite position or authority to accept service, in violation of 6 RCNY § 2-234. In addition, Respondent violated 6 RCNY § 2-234 by not setting forth facts in his affidavit of service showing that service was made in an authorized manner, as required by § 306(a) of the New York State (NYS) Civil Practice Law and Rules (CPLR).

At the telephonic hearing, held on May 2, 2024, Petitioner's attorney reaffirmed his statements on the summons and submitted the referenced affidavit of service; Respondent's process server license; Roland Williams's affidavit in support of One Horse & Two Snakes motion to dismiss; the court order referring the service issue to a Special Referee, filed on January 7, 2022; the Special Referee's order, filed on May 31, 2022; and the court order dismissing the action, filed on July 7, 2022. Petitioner's attorney asserted that although not binding on the Tribunal, the Special Referee's order was persuasive evidence in support of the charges. Petitioner's attorney acknowledged that the Special Referee's order was ambiguous and could be read as finding service invalid either because (i) no one was served at 802 DeKalb Avenue, Apt. D2, at the

purported time of service, i.e. Respondent's affidavit of service was completely false, or (ii) Mr. Williams, the president and owner of One Horse & Two Snakes, was the only person upon whom service could properly be made.

Respondent testified as follows. He was assigned to serve legal documents on One Horse & Two Snakes by ABC Process Service and instructed to go to 802 DeKalb Avenue, Apt. D2. On August 18, 2021, he went to 802 DeKalb Avenue and rang the bell for Apt. D2. After he was buzzed into the building, he took the stairs to the second floor and knocked on the door of Apt. D2. An individual answered the door. He identified himself to the individual and explained that he had some papers to serve on One Horse & Two Snakes. He asked the individual if this was the office of One Horse & Two Snakes, and when the individual said yes, he asked whether the individual was authorized to accept service for One Horse & Two Snakes, and the individual again said yes. He asked the individual his name, but the individual refused to give him one. There was no one else in the apartment. After he served the papers on the individual and left the building, he immediately took a photograph of the building and uploaded it into his Global Positioning System (GPS), entered the service details into The Independent Server application, which populated an affidavit of service prepared by ABC Process Service, and manually entered the service information in his log. He described the individual served as a managing agent because this is the title he is supposed to use when told that the person is authorized to accept service. Everything he stated in his affidavit of service is true. If no one had answered the door, he would have entered this in the Independent Server application and log and made another attempt at service at different time.

In support, Respondent's attorney submitted a letter from plaintiff's counsel to ABC Process Service instructing it to serve papers upon One Horse & Two Snakes at 802 DeKalb Avenue, Apt. D2; Respondent's handwritten log entry for service on One Horse & Two Snakes; the photograph uploaded into Respondent's GPS, stamped with the date, time, and location coordinates; and a NYS Department of State record showing that One Horse & Two Snakes has its office at 802 DeKalb Avenue, Apt. D2. Respondent's attorney argued as follows. Respondent's affidavit of service is accurate. The information in the affidavit of service is consistent with Respondent's testimony, his log entry, and GPS photograph. There is no reason why Respondent would go to 802 DeKalb Avenue and not serve the papers on someone, if that is what the Special Referee found. Mr. Williams, on the other hand, had every reason to invalidate service and have the case against him thrown out. Respondent reasonably relied on the representation of the person served that such person was authorized to accept service. Petitioner's attorney has cited to no law that requires an affidavit of service to contain a description of how the process server determined that the person served was authorized to accept service on behalf of a corporate defendant.

In her decision dismissing the charges, the JHO credited Respondent's testimony and documentary evidence and found that he effectuated service as reflected in his affidavit of service. The JHO found further that service was proper, as Respondent was permitted to reasonably rely on the representation of apparent authority to accept service for One Horse & Two Snakes. Relying on *DCWP v. Norberto Maldonado*, Appeal No. 220003HR (June 24, 2022), the JHO also found that Respondent was not required to include in his affidavit of service how he ascertained that the person he served was authorized to accept service.

On appeal, Petitioner's attorney asserts as follows. The facts here are distinguishable from *Norberto Maldonado*, 220003HR, as in that case no evidence was presented to overcome the presumption of proper service that arose from a facially valid affidavit of service. In contrast, Petitioner submitted the Special Referee's order, adopted by the Supreme Court, finding service was improper based on Mr. Williams's and his wife's testimony, corroborated by telephone records, establishing that Mr. Williams was not at 802 DeKalb Avenue at the purported time of service. Respondent's inconsistent hearing testimony was insufficient to refute Petitioner's evidence, and the JHO's credibility finding is against the weight of the evidence. In its answer, Respondent assets that there is no basis to overturn the JHO's decision.

## ISSUE ON APPEAL

The issue on appeal is whether Petitioner established that Respondent's affidavit of service was false or that he failed to effectuate service properly.

## APPLICABLE LAW

Section 2-234 of 6 RCNY provides that "[t]he licensee shall at all times strictly and promptly conform to all laws, rules, regulations and requirements of the federal, state and municipal authorities relating to the conduct of licensees and the service of process in the State of New York and the preparation, notarization and filing of affidavits of service and other documents now in force or hereafter adopted during any license period."

CPLR § 311(a)(1) allows personal service upon a corporation by delivering process to "an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service."

## ANALYSIS

For the following reasons, the Tribunal affirms the JHO's decision.

On this record, the Tribunal finds that Petitioner failed to establish that Respondent's affidavit of service was false or that he failed to effectuate service properly. In his affidavit of service, Respondent attested that at 1:28 p.m. on August 18, 2021, he served One Horse & Two Snakes by delivering a true copy of a summons and verified complaint and related documents to an individual, described as a male aged 35-60, with tan skin, black hair, height of 5'-9"-6'-0", and weight of 161-200 lbs., who refused to give a name, and Respondent "knew said individual to be 'Managing Agent' of One Horse & Two Snakes. A process server's affidavit of service establishes a prima facie case as to the method of service, giving rise to a presumption of proper service. *See Turner v. Sideris*;[1] *HMC Assets, LLC v. Dhanani*.[2] A sworn denial containing detailed and specific contradictions to the process server's affidavit of service generally refutes the presumption of proper service. *See Turner v. Sideris, supra*.

On appeal, Petitioner's attorney contends that the Special Referee's order, adopted by the Supreme Court, and related evidence overcame the presumption of proper service established by

---

[1] 187 A.D.3d 963 (2nd Dept. 2020).
[2] 173 A.D.3d 700, 701 (2nd Dept. 2019).

Respondent's affidavit of service. However, Respondent supplemented his affidavit of service with testimony that on August 18, 2021, he went to Apt. D2 at 802 DeKalb Avenue, rang the front entry bell for the apartment, was buzzed into the building, knocked on the door of Apt. D2, told the person who answered that Respondent had papers to serve on One Horse & Two Snakes, asked the person if the apartment was the office of One Horse & Two Snakes and if such person was authorized to accept service for One Horse & Two Snakes, and having received affirmative responses, served this person. The JHO credited Respondent's testimony, which was corroborated by the GPS photograph and log entry contemporaneously made with service. The Tribunal generally defers to a JHO's credibility finding unless against the weight of the evidence, which the Tribunal does not find here. *See NYC v. Luis Duran*, Appeal No. 1400643 (August 28, 2014).

Contrary to Petitioner's attorney's assertion on appeal, Respondent testified repeatedly that he asked the person he encountered in Apt. D2 whether such person was authorized to accept service. Moreover, the Tribunal agrees with Petitioner's attorney's hearing assertion that the Special Referee's finding is ambiguous. In his affidavit in support of his motion to dismiss, Mr. Williams attests that (i) 802 DeKalb Avenue, Apt. D2, is One Horse & Two Snakes's official office address, as well as his residence, at which only he, his wife, and their 8-year old son reside; (ii) he was not home at the purported time of service but working at 68 Jay Street, Suite 211, Brooklyn, as verified by telephone records; and (iii) he is the only managing director of One Horse & Two Snakes and the only person residing at Apt. D2 who could remotely match the description of the person served in Respondent's affidavit of service. Notably, Mr. Williams does not state that there was no one who matched the description in the affidavit of service at Apt. D2 at the time of service, only that he was not present. Therefore, it is unclear on this record whether the Special Referee found service improper because no one was present in Apt. D2 at the time of purported service or because only Mr. Williams, who was not present in Apt. 2D at the time of purported service, was authorized to accept service for One Horse & Two Snakes.[3] In light of this ambiguity, the Tribunal gives little probative weight to the Special Referee's finding, if indeed made, that no one was present in Apt. D2 at the time of service.

As for the Special Referee's possible finding that service was defective because only Mr. Williams was authorized to accept service, the Tribunal finds that under the circumstances, it was reasonable for Respondent to rely on the apparent authority of the individual in Apt. D2. The evidence in the record shows that 802 DeKalb Avenue, Apt. D2, was the office of One Horse & Two Snakes, as well as the residence of Mr. Williams, the owner and president of One Horse & Two Snakes. Respondent confirmed with the individual who answered the door of Apt. D2 that it was One Horse & Two Snakes's office and explained that he was there to serve papers on that corporation. Respondent also asked the individual, who was alone in the apartment, if he was authorized to accept service for One Horse & Two Snakes, and delivered the summons and verified complaint and related papers when that individual said yes. Although the individual did not give Respondent his name or position, it was reasonable for Respondent to believe that such individual was employed by One Horse & Two Snakes or was a close associate of Mr. Williams. Consequently, the Tribunal finds that the manner of service here was reasonably calculated to give One Horse & Two Snakes fair notice. *See Fashion Page, Ltd. v. Zurich Ins. Co.*, 50 N.Y.2d 265, 272 (1980) (service should be sustained where a process server reasonably relies on the

[3] A transcript of the traverse hearing was not provided.

claim of apparent authority of a corporate employee and where service is made in a manner, which objectively viewed, is calculated to give the corporation fair notice).[4]

Accordingly, the Tribunal affirms the JHO's decision dismissing two charges of 6 RCNY § 2-234.

*By: OATH Appeals Division*

[4] The Tribunal notes that on appeal, Petitioner's attorney does not identify any error of fact or law made by the JHO with respect to the second charge of 6 RCNY § 2-234 for failure to set forth sufficient facts in the affidavit of service showing that service was made in an authorized manner.